WILLIAM HALTON CHASE, SARAH CHASE, and others
vs. ROSS R WINANS, CELESTE WINANS, and others.

*Practice in Equity—When an Issue of fact from a Court of
Equity to be tried by a Jury, should be allowed—Power and
right of a Court of Equity to decide questions of Law and
Fact—Probate of wills—Testamentary acts—Mental condi-
tion of Testator—Presumption in support of the Validity of
Testamentary acts—Lapse of time—Opinion of a Non-expert
as to the Mental condition of a party—Testamentary con-
struction.*

Where after answers to a bill in equity are filed, but before the tes-
timony is in, or the Judge can know or see by examination what
will be the state of the proof, whether doubtful or conflicting, and
proper to be referred to a jury, an application by the complain-
ants for issues to be framed and sent to a Court of law to be tried
by a jury, cannot properly be allowed.

An issue of fact from a Court of equity to be tried by a jury is not a
matter of right, at any stage of the proceeding; and in the exer-
cise of a discretion it should only be allowed where the proof
before the Judge creates doubt, by reason of conflict, doubtful
credibility of witnesses, or where from a mass of circumstances, it
may be difficult to draw a proper conclusion. It is never allowed
as a substitute for the failure of proof, or for omitted evidence.

A Court of equity has full power and right to decide every question
of law or fact which may arise out of the subject-matter before it,
and over which it has jurisdiction; and the trial by issue forms no
necessary incident to the proceedings of such Court. It is resorted
to simply as a means of informing the conscience of the Court,
and is not binding upon it.

It is no part of the ordinary jurisdiction of a Court of equity to
revise and correct the probate of wills.

After the lapse of more than fifty years, with the readiest opportunity
at all times to make contest of a codicil to a will, in the ordinary
way of trial of such questions by caveat, it would be doing vio-
lence to every presumption in support of the validity of testamen-

tary acts, and of the rights acquired thereunder, to open the door to mere speculative opinions as to the mental condition of the testator.

Lapse of time operates with fitness and force, to secure from question and attack testamentary acts, where their validity depends upon the mental condition of the testator, and the lapse of time has been such as to obscure and efface the accurate recollection of witnesses as to the influences operating upon, and the conduct of, the party at the time of the act in question.

While a non-expert is allowed to express his opinion as to the mental condition of the party whose act is involved, that opinion is worth nothing as evidence unless supported by his own proof of facts sufficient to justify his conclusion.

The will and six codicils of a testator were admitted to probate in 1828, soon after his death. By the will executed in 1823, the testator gave and bequeathed to his daughter H. A., during her life, all the rents then due, or which might thereafter become due, on a certain lot of ground, containing about twenty-one acres, which he had previously leased to one V. D., and the estate in such lot after the death of H. A., he devised to his grandchildren, in fee simple, to be equally divided among them. He also gave to his daughter H. A., sixty shares of bank stock. In the second codicil executed in 1824, he recited that this bank stock had been adeemed, and he gave her in lieu thereof $3000, and he revoked the bequest of the stock. In the sixth codicil, made in 1826, he again revoked and declared void the clause in his will by which he had bequeathed the bank stock to his daughter H. A., and in lieu thereof he devised to her the twenty-one acres of land. In 1859, H. A. leased this lot of ground for ninety-nine years, renewable forever, to T. W. in consideration of $10,000, subject to an annual ground rent of $2,400. In 1869, for the consideration of $40,000, the lessor conveyed the reversion in fee to T. W. and others. On a bill filed in March, 1880, by some of the grandchildren of the testator, and others, against other of the grandchildren of the testator, and others, including the parties claiming under the conveyances made by H. A. for the purpose, really, though not professedly, of establishing the invalidity of the sixth codicil of the testator, it was HELD:

That while the testator did the unnecessary and useless act of repeating the revocation of the bequest of the bank stock, it did not

follow from that unnecessary act, that he did not intend to give the real estate in *addition* to the $3000, in lieu of the bank stock adeemed;—it must be taken that he intended to devise the real estate in lieu of the bank stock, because he so expressly declared.

APPEAL from the Circuit Court of Baltimore City.

This appeal was taken from a *pro forma* decree, passed by agreement, dismissing the bill of the complainants. The case is stated in the opinion of the Court.

The cause was argued before MILLER, STONE, ALVEY, IRVING, and RITCHIE, J.

*Charles J. Bonaparte,* for the appellants.

*Arthur Geo. Brown,* and *John H. B. Latrobe,* for the appellees.

ALVEY, J., delivered the opinion of the Court.

The late Judge Jeremiah Townley Chase died in 1828. He made his last will and testament in 1823. Between the date of his will and the time of his death he made six different codicils to his will; the will and codicils were made and executed in due form to pass real estate, and were, soon after the death of the testator, duly admitted to probate.

The testator, at the time of his death, was seised of a parcel of ground, situate in Baltimore County, now in Baltimore City, containing about twenty-one acres of land; and which had, prior to his death, been leased to a certain Vachel Dorsey. By his will, he gave and bequeathed to his daughter, Hester Ann Chase, during her life, all the rents then due, or which might thereafter become due, on the lot of ground which he had so leased to Vachel Dorsey; and the estate in such lot, after the death of his daughter, Hester Ann, he devised to his grandchildren in fee simple,

to be equally divided among them. He also gave to his daughter, Hester Ann, sixty shares of the stock of the Farmers' Bank of Maryland.

By the second codicil, executed in May, 1824, he recited that because the sixty shares of Bank stock bequeathed to his daughter, Hester Ann, by his will, had been applied to the payment of a judgment recovered by the Bank against his son-in-law, he bequeathed to his said daughter the sum of $3000, in lieu and in the place of the shares of stock so bequeathed to her ; and he thereby declared that he revoked and annulled "all devises and bequests of shares of stock in the said Bank to the persons therein mentioned." And by the sixth codicil, executed in 1826, he again revoked and declared void that clause in his will by which he bequeathed the sixty shares of stock in the Farmers' Bank of Maryland to his daughter Hester Ann, and in lieu thereof, he devised to her all his right, title and interest in the twenty-one acres of land which he had leased to Vachel Dorsey, then deceased.

This devise of the Vachel Dorsey lot to the daughter Hester Ann, was allowed to stand unimpeached until several years after the death of the devisee, which took place in 1875. In 1859 she executed a lease of the lot of ground for ninety-nine years, renewable forever, to Thomas Winans, in consideration of $10,000, subject to an annual ground rent of $2,400 ; and in pursuance of a covenant in the lease, the reversion in fee was conveyed by the lessor, on January 5th, 1869, to Thomas, William J., and Ross Winans, in consideration of $40,000, making the aggregate consideration for the property $50,000. The grantees, and those claiming under them, have been in possession of the property ever since the date of the conveyances by the devisee, holding and claiming the property as their own.

The bill in this case was filed on the 26th of March, 1880, by some of the grandchildren of the testator, and others, against other of the grandchildren of the testator,

and others, including the parties claiming under the. conveyances made by the devisee, Miss Hester Ann Chase. The object of the bill, professedly, is to obtain partition of the estate in question, and to procure an account from the possessors thereof; but the real object is to bring into question and contest the validity of the sixth codicil and the probate thereof, or, failing in that, to raise the question whether the devise therein of the Vachel Dorsey lot was good and effective to defeat the previous devise of the same property to the grandchildren of the testator. This would seem to be the real and substantial object in view, and the question of partition and account are only incidental and dependent.

Before proceeding to consider the main questions, there is a preliminary question presented for determination.

After the answers were filed, but before the testimony was in, or the Judge below could know or see by examination what would be the state of the proof, whether doubtful or conflicting, and proper to be referred to a jury, the plaintiffs made application for issues to be framed and sent to a Court of law to be tried by a jury. This application was refused, and we think properly so.

An issue of fact from a Court of equity to be tried by a jury is not a matter of right, at any stage of the proceeding ; and in the exercise of a discretion it should only be allowed where the proof before the Judge creates doubt, by reason of conflict, doubtful credibility of witnesses, or where, from a mass of circumstances, it may be difficult to draw a proper conclusion ; but it is never allowed as a substitute for the failure of proof, or for omitted evidence. *Whitaker vs. Newman,* 2 *Hare,* 300. Indeed there is no doubt that a Court of equity has the power and full right to decide every question of law or fact which may arise out of the subject-matter before it, and over which it has jurisdiction, and the trial by issue forms no necessary incident to the proceedings of such Court. It is resorted to simply

as a means of informing the conscience of the Court, and is not binding upon it; and it is said by high authority that the expense and delay attendant upon such mode of trial should only be incurred when the Court, in the exercise of a sound discretion, may deem it necessary. *Short vs. Lee,* 2 *J. & Walk.,* 495. By the English practice there seems to be an exception to the general rule in favor of the heir at law ; but it does not appear that any such exception has ever been recognized in our practice, and such exception would hardly consist with the terms of the rule as we find it stated in our books. *Hilleary vs. Crow,* 1 *H. & J.,* 542 ; *Fornshill vs. Murray,* 1 *Bland,* 485 ; *Stewart vs. Iglehart,* 7 *G. & J.,* 132 ; *Barth vs. Rosenfeld,* 36 *Md.,* 604, 613 ; *Harding vs. Hardy,* 11 *Wheat.,* 103.

Here the Court had no means of ascertaining the nature and character of the proof proposed to be produced, at the stage of the proceedings at which the application for issues was made, and therefore could not determine upon the necessity or propriety of resorting to such mode of trial. The application was, therefore, properly rejected.

1. The first question intended to be raised by the bill is, Whether the sixth codicil to the will of the testator is invalid, and should not therefore have been admitted to probate, by reason of the alleged incapacity of the testator ?

There has been no exception to the exercise of jurisdiction by a Court of equity in this case. But it is proper for us to say, in order that this case should not be regarded as a precedent for the exercise of jurisdiction in such cases in the future, that it is no part of the ordinary jurisdiction of a Court of equity to revise and correct the probate of wills. In regard to wills of real estate, if formally executed according to the requirement of the statute, unless it be in cases of trusts or equitable estates, or there be some legal impediment to the party's right to maintain an action of ejectment, such party must assert his right in an action at law. Where the law furnishes an ample remedy there is

no right to resort to a Court of equity.   See upon this sub-
ject, *Kerrick vs. Bransby*, 3 *Bro. P. C.*, 358 *;* 7 *Ib.*, 437 ;
*Allen vs. McPherson*, 1 *Ho. L Cas.*, 191 ; *Boyse vs. Ross-
borough*, 6 *Ho. L. Cas.*, 2 ; *Case of Broderick's Will*, 21
*Wall.*, 503.

But, as we have said, there is no exception taken to the
jurisdiction in this case, and we are therefore not called
upon to apply the principle to which we have referred.
And coming now to the question of the supposed invalidity
of the sixth codicil, by reason of the alleged failure of the
mental powers of the testator, upon careful examination of
the record, we fail to find anything whatever to justify
such a conclusion.

The will and the codicils were admitted to probate in
1828, soon after the death of the testator, and they have
remained unimpeached and unquestioned to the time of
the filing of this bill—a period of fifty-two years.   Litiga-
tion arose soon after the death of the testator in regard to
the liability of certain devises and bequests contained in
the will and codicils, to contribution for the payment of
debts (*Chase vs. Lockerman*, 11 *G. & J.*, 185) ; but during
the whole course of that protracted and important litiga-
tion, it does not appear that there was a suggestion inti-
mated that all the testamentary papers admitted to pro-
bate, (including the sixth codicil,) were not valid and
beyond impeachment.   After such a lapse of time, with
the readiest opportunity at all times to make contest of the
now disputed paper, in the ordinary way of trial of such
questions by caveat, it would seem to be doing violence to
every presumption in support of the validity of testamen-
tary acts, and of the rights acquired thereunder, to open
the door to mere speculative opinions as to the mental con-
dition of the testator.   The lapse of time operates to secure
from question and attack many of the most important acts
of men, but none with greater fitness and force than testa-
mentary acts, where their validity depends upon the

mental condition of the testator, and the lapse of time has been such as to obscure and efface the accurate recollection of witnesses as to the influences operating upon and the conduct of the party at the time of the act in question. No case could afford better illustration of the wisdom of this than the present.

But if we disregard this presumption in favor of the codicil, and of the *prima facie* effect of the probate, and turn to the facts as proved, we find nothing to impeach the codicil. In support of that paper, we have the testimony of Dr. John Ridout; and though quite an aged person, he gave very clear and positive testimony of his personal knowledge as to the mental competency of the testator. On the other hand, we have two witnesses, not experts, who testify to certain *impressions* made upon their minds at the time, by certain acts and deportment of the testator. These impressions are of the most indefinite character, and would seem to be founded upon very slight and inconclusive grounds. While a non-expert is allowed to express his opinion as to the mental condition of the party whose act is involved, that opinion is worth nothing as evidence, unless supported by his own proof of facts sufficient to justify his conclusion. Here the facts detailed are wholly insufficient.

2. The remaining question is, as to the effect of the devise of the property in controversy, as contained in the sixth and last codicil. It is contended that this devise in fee by the codicil, to the testator's daughter, Hester Ann, was made in mistake or forgetfulness of the previous devises and bequests contained in the will and codicils, and that, as such last devise, if allowed effect at all, would have the effect to revoke the devise of the same property made by the will to the grandchildren, such last devise should not, upon established principles of construction, be allowed to operate a revocation of the first devise. This is a very strict rule, and is only allowed application in a

very plain case, as is shown by all the text writers and decided cases. *Swinburne on Wills*, pt. 7, sec. 5, *p.* 894; 1 *Pow. on Div.*, 523, 525; 1 *Jarm. on Wills*, (5th *Am. Ed.*) 351; *Evans vs. Evans*, 10 *Ad. & Ell.*, 228. Upon what proof of intention, in such cases, the Court will act, is by no means free of difficulty. But it is far from being plain that this last devise was made under a mistake or misapprehension on the part of the testator, as to the previous provision made for his daughter. In the second codicil he recited that the bank stock given to her by his will had been adeemed; and he gave her in lieu thereof $3000; and he revoked the bequest of the stock. In the sixth codicil, made some two years after the second, he again declared revoked and void the clause in his will by which he had bequeathed the sixty shares of bank stock to his daughter, Hester Ann, and in lieu thereof he devised to her the property in question. In this, it is true, the testator did the unnecessary and useless act of repeating the revocation of the bequest of the bank stock, but it does not follow from that unnecessary act, that he did not intend to give the real estate in question, *in addition* to the $3000, in lieu of the bank stock adeemed. We are to take it that he intended to devise the real estate in lieu of the bank stock, because he has so expressly declared; and it would be more consistent with the rules of construction to contend that the previous legacy of $3000 had been revoked by implication than that the last devise should be null and without effect.

Upon the whole, we are clearly of opinion that there is no ground for the claim made in this case, and the *pro forma* decree of the Court below should be affirmed.

*Decree affirmed.*

(Decided 2nd March, 1883.)