READMAN *v.* FERGUSON.

WILLS; JURISDICTION; EQUITY; TRUSTS.

1. The validity of a will of real estate is to be determined by the laws and by the courts of the jurisdiction in which such real estate is situated, and not by any other law or by any other tribunal.

2. A bill in equity for the establishment of a will of real and personal estate, as a will of real estate, for the perpetuation of the testimony of the attesting witnesses, for instructions to the complainants as trustees in respect to the payment of legacies and for general relief, may be maintained even though the personal estate may not for some reason be available for the satisfaction of the legacies, especially when it appears that the personal estate in any event is wholly insufficient to discharge them.

3. Where a testator gives several legacies, and then without creating an express trust to pay them, makes a general residuary disposition of the whole estate, blending the realty and personalty together in one fund, the real estate as well as the personalty will be charged with the payment of the legacies; and a legatee can sue to recover his legacy without distinguishing in his bill the estate into the two kinds of realty and

personalty, it being the manifest intention of the testator that both should be charged with the payment of the money legacies.

4. Where the executrices named in a will are also residuary devisees and are charged with the duty of raising a given sum from the estate, and to invest it for the benefit of an infant legatee, and some of the heirs at law of the testator dispute the validity of the will, such executrices may, in their capacity as trustees, maintain a bill in equity to establish the will and to perpet. uate the testimony of the subscribing witnesses, in order that such trust may be enforced.

No. 783. Submitted May 5, 1898. Decided June 7, 1898.

HEARING on an appeal by the complainants from a decree sustaining a demurrer to and dismissing a bill to establish a will and to perpetuate testimony. *Reversed.*

The COURT in its opinion stated the case as follows:

This is a suit in equity instituted in the Supreme Court of the District of Columbia, for the purpose of establishing a will and perpetuating testimony.

It appears from the record before us that one Elizabeth C. Earhart, who died on March 7, 1897, in the city of New Orleans, in the State of Louisiana, which was her place of residence, left a last will and testament, executed in the city of Washington, in the District of Columbia, on September 29, 1890, and a codicil thereto, executed at the city of Asheville, in the State of North Carolina, on August 22, 1892; that the will and codicil were both executed in such manner as to convey real estate in the District of Columbia; that the testatrix, besides wearing apparel and other personal articles, stated to be of the value of not more than $100, died seized and possessed of an estate consisting both of real and personal property; that the personalty consisted of promissory notes to the amount of $3,000, executed in the city of Washington by residents thereof and secured upon real estate therein, and that the real estate consisted of a valuable lot of ground in the city of Washington, improved by a store and residence thereon. By the will two legacies

were given, one of $1,000 to the appellee, Carter Earhart, a grandson of the testatrix, which was to be paid to him within twelve months after her decease, and another of $5,000 to her granddaughter, the defendant, Jessie Ross, which amount, as the legatee was an infant, it was prescribed should be invested by the executrices of the will as soon as practicable, and the interest applied to her education and accomplishment, and the principal to be paid to her when she became of age; and all the rest and residue of her estate, real, personal and mixed, was devised and bequeathed to the two youngest daughters of the testatrix, Ada G. Readman and Jessie E. Ross, who were also named as executrices of the will without bond. The codicil, executed at Asheville, enlarged the legacy to Jessie Ross from $5,000 to $10,000, but otherwise reaffirmed the will.

Upon the death of the testatrix, the will and codicil were, on May 11, 1897, filed in the office of the Register of Wills for the District of Columbia, and proceedings were instituted for their probate. A delay, however, was had at the request of counsel for one of the appellees, Mrs. Virginia B. Ferguson, who seems to be another daughter of Elizabeth C. Earhart, and who denied the validity of the will and codicil; and no further steps appear to have been taken for the purpose of such probate. But subsequently Virginia B. Ferguson and a son of the deceased, Ferdinand B. Earhart, instituted proceedings in the courts of the State of Louisiana for the grant of administration on the estate of the decedent as in case of intestacy; and these proceedings, which, according to the laws of that State, seem to have embraced alike the personal and the real estate, were pending at the time of the institution of this suit and at the time of the rendition of the decree therein, although we are advised by the brief of the counsel for the appellants that quite recently, on April 4, 1898, they have been terminated adversely to the contention of the parties who instituted them, by a decree of the Supreme Court of the State of Louisiana, which held, con-

sistently with the universal rule in such matters, that the courts of the State of Louisiana were without jurisdiction to determine the validity of a will of real estate in the District of Columbia.

Thereupon, on September 3, 1897, the appellants, Ada G. Readman and Jessie Earhart, as executrices under the will, and also as trustees, filed their bill in equity in this cause, in which, after statement of the foregoing facts, and admitting the probable invalidity of the will as a will of personalty under the laws of the State of Louisiana, the place of domicil of the deceased, by which such invalidity was to be determined, they allege the validity of the instrument for the purpose of the conveyance of real estate, and ask the direction of the court as to the payment of the legacies mentioned, and whether and to what extent they were a lien or charge upon the real estate of the decedent. And the prayers of the bill, after the prayer for process, were that the testimony of the attesting witnesses to the will and codicil should be taken *in perpetuum rei memoriam,* that the will should be established as the last will and testament of Elizabeth C. Earhart, and for general relief. A copy of the will and codicil was filed with the bill of complaint.

The defendants to the bill were the four children of Elizabeth C. Earhart (including the two complainants in their individual right), who were her heirs-at-law and next of kin, and her two grandchildren, legatees under the will. Only Virginia B. Ferguson appeared, and she filed a demurrer to the bill. The demurrer was sustained by the court below, and the complainants preferring a dismissal of the bill without prejudice to leave to amend, the bill was accordingly dismissed, without prejudice. From the decree of dismissal the complainants have appealed to this court.

*Mr. J. J. Darlington* for the appellants:

1. The proposition that the courts of Louisiana have jurisdiction, either exclusive or concurrent, to determine the validity of the will and codicil, in so far as they relate to

the real estate situated in the District of Columbia, it is sub-mitted is, without support, either in principle or authority. In cases in which the question is one between State and Federal courts in the same jurisdiction, the rule of comity undoubtedly is that the court first acquiring the cause, pro-vided the subject-matter of the suit be within its jurisdiction, shall be permitted to retain it. But, where the jurisdiction is not concurrrent, and the subject-matter in litigation in the one is not within the cognizance of the other, no such rule has ever obtained, and this is declared by the court in the case principally relied upon by the appellees below. *Moran* v. *Sturges*, 154 U. S. 284. That the *locus rei sitæ* has exclusive jurisdiction to determine the validity and effect of wills and conveyances affecting real estate is too well settled to justify any extended citation of authority. The Supreme Court has repeatedly recognized this rule. *Mc-Cormick* v. *Sullivant*, 10 Wheat. 202; *Okie* v. *Bennett*, 11 How. 33, 44–45; *Kerr* v. *Moon*, 9 Wheat. 570; 3 Am. & Eng. Encyc. L. 630–632. This principle, moreover, is expressly recognized and declared by the Supreme Court of Louisiana, comity towards the tribunals of which State induced the learned justice below to pass the decree here appealed from. *Dunbar's Case*, 5 La. Ann. 159–160; *Lewis's Estate*, 32 La. Ann. 387; *Hughes* v. *Hughes*, 14 La. Ann. 85. Indeed, since the decree below, in this very case, in which the learned justice concluded that comity required that the courts of this District should abstain from exercising jurisdiction under the circumstances—namely, *In re Succession of Eliza-beth C. Earhart*—in which case the very will here in contro-versy was in question, between the parties to this suit, the appellee here contending that the courts there should pass upon the question of this will and determine whether the testatrix died intestate as to her lands situated here, the Supreme Court of that State affirmed the decision of the lower court that there was no jurisdiction there for such purpose.

2. The fact that the will is invalid as to the personal estate, and that the latter can not be subjected to the payment of legacies, can be no ground for refusal to establish the will or to perpetuate the testimony of its execution with reference to the real estate, nor for refusing to the trustees under the will the instructions sought as to performance of the trusts imposed upon them.

3. The will, after making the two bequests in favor of the grandchildren of the testatrix, gives all the rest of her property by way of a general residuary disposition of the whole estate, blending the realty and personalty together in one fund. That the effect of this kind of a will is to charge the legacies upon the realty is settled by many authorities of which it is only necessary to cite *Lewis* v. *Darling,* 16 How. 1.

4. No authority in support of the proposition that the court is without jurisdiction to perpetuate the testimony of the attesting witnesses was offered below; nor, it is believed, can any principle or precedent be cited excluding cases like the present from the ancient and well-established equitable jurisdiction in this regard. And, if maintainable for this purpose, even though it should be held beyond the jurisdiction of the court to establish the will or grant the other relief prayed, the decree of dismissal must be reversed as erroneous. But the jurisdiction of the court to establish the will is well established, under circumstances like the present. The Orphans' Court of this District has no jurisdiction to entertain application for probate of a will where, as in the present instance, the testator is without personal property in the District, and even where there is personal property, and, consequently, jurisdiction in that court, probate of a will there, even after caveat and the verdict of a jury in the circuit court, is insufficient to affect real estate, or to furnish even *prima facie* evidence of validity in so far as real estate is concerned. *Perry* v. *Sweeny,* 11 App. D. C. 404. Unless, therefore, there were jurisdiction in the equity court to perpetuate the testimony of attesting witnesses to a

will, and to establish its validity by appropriate proceedings in cases like the present, in which no action at law can lie for the purpose, the situation would be an exceedingly unfortunate one, tending to deprive devisees of substantial rights of ownership, to embarrass executors and trustees in the performance of their duties, and to render uncertain and dangerous all titles to real estate derived through wills. The jurisdiction seems to have existed from very early times, and, it is believed, is unquestioned. Story Eq. Jur., Secs. 1445 to 1449*d.* According to some authorities cited by this author, there is "an inherent equity on the part of the devisee, whether legal or equitable, arising from the mere fact of the devise, to have the will established against the heir;" while, according to others, courts of equity do not possess original authority to establish the validity of a will of real estate *per se,* but only as incident to some other object, as carrying into effect trusts and the like, upon the ground that, if no obstacles intervene, the devisee, if he has a legal estate, may sue at law. In the present case, however, these distinctions are immaterial, for the reasons, first, there is no remedy at law; secondly, because the establishment of the will is incidental and necessary to carrying out of the trusts imposed upon complainants by the will, there being no means of raising the trust funds provided for the granddaughter otherwise than through the real estate in question; and, thirdly, that relief is incidental and necessary to the instructions and aid of the court which complainants are entitled to ask touching the effect of the insufficiency of the will as to the personal estate of the testatrix upon the amount of the said trust fund. In *Colcolough* v. *Boyce,* 6 H. L. 1, it is held that a mere devisee, where no questions of trust are involved, is entitled to have the will established against the heir.

*Mr. Jeremiah M. Wilson* and *Mr. A. A. Hoehling, Jr.,* for the appellees:

1. The courts in Louisiana, the place of domicile of de-

cedent, having jurisdiction of all the parties and of the subject-matter, and which jurisdiction first attached, and involving the same issue sought to be raised in this proceeding, should, upon principles of comity, be permitted to proceed therein and should not be interfered with by the process of another court. This is familiar law, and cases innumerable can be found in support of the doctrine. *In re Chetwood,* 165 U. S. 443, 460; *Moran* v. *Sturges,* 154 U. S. 256, 267; *Brooks* v. *Delaplaine,* 1 Md. Ch. 351; Work on Courts, Sec. 17; *Taylor* v. *Fort Wayne,* 47 Ind. 274, and cases cited.

2. The bill contains no allegation that there is any personal estate of decedent in this jurisdiction. It admits the invalidity of the will in respect of personalty, but it seeks to establish the validity of said will in its entirety, apparently, both as to personalty and realty, the bill and prayers being inconsistent in this respect.

(a). The chancery court has no jurisdiction to maintain the present bill in respect of personalty; (1) because said matter is cognizable in the court of the domicile of decedent, the rule being that the rights of succession to personal property will be governed by the law of the place where the decedent had his domicile at his decease, and by that law as it then existed; (2) because there is no personalty within this jurisdiction; (3) because the bill admits the invalidity of said will so far as it affects the personalty; and, (4) because if said matter is cognizable at all in this jurisdiction the Orphans' Court is the proper forum. Its jurisdiction has already been invoked, and it can furnish complete relief.

(b). Has the chancery court jurisdiction to establish the validity or invalidity of a will in respect of realty? We do not find that this precise question has ever been raised or determined in this jurisdiction, nor have we found any express adjudication upon the subject in this country.

There have been decisions in recent years, both by the

Supreme Court of the United States and by this court, in respect of the effect of probate of the will in the Orphans' Court. These and other decisions to which reference will be made hold that the probate of a will, in the Orphans' Court, is conclusive only as to the personalty, and they further affirm that "the validity of wills of real estate is solely cognizable by courts of common law in the ordinary forms of suits." *Perry et al.* v. *Sweeny,* 11 App. D. C. 404; *Tompkins* v. *Tompkins,* 1 Story C. C. 552; *Smith* v. *Bonsall,* 5 Rawle, 80 ; *Rowland* v. *Evans,* 6 Pa. St. 440; *Parker* v. *Parker,* 11 Cush. 525 ; *Campbell* v. *Porter,* 162 U. S. 481 ; 2 Pomeroy's Eq. Jur., Secs. 1445–1449; *Broderick's Will,* 21 Wall. 503 ; *Ellis* v. *Davis,* 109 U. S. 494.

In *Boyse* v. *Rossborough,* 3 DeGex, M. & G., 817, chancery maintained jurisdiction to establish the validity of a will in respect of realty. The report of that decision is exceedingly full and goes into the question quite in detail and at considerable length. It will be observed, however, that that case only decided that a devisee could maintain such a bill against an heir-at-law. The bill in this case is professedly filed by the executrices named in the will, and who, as such, have absolutely no title whatever to the realty of decedent, since an estate in lands devised goes to the devisee and not to the executors, and they have, therefore, no standing to maintain such a bill as the present. The right of an executor to maintain a bill of this kind is expressly denied in *Fingal* v. *Blake,* 1 Malloy's Rep., Irish. Ch. 113.

3. While the body of the bill asks instructions as to whether the legacies shall be charged on the realty of decedent (having previously admitted the invalidity of the will as to personalty), there is no prayer for any such relief, nor any decree for sale of the realty for such purpose asked, and it would, therefore, seem proper to pass by that question. The legacies in the present will, however, are not made, either expressly or by necessary implication, a charge upon the realty of decedent. There are decisions to the effect

that where the testator directs the payment of his debts, also of legacies, and then makes a general disposition of the "residuary estate," blending the realty and personalty together in one fund, the realty will be charged with the payment of legacies. And several decisions can be found holding that the same principles, applying in this respect to the debts of testator, apply equally to legacies. *Jones* v. *Selby*, cited in *Fenwick* v. *Chapman*, 9 Pet. 469; *Lewis* v. *Darling*, 16 How. 1–10. In such case the residue can only mean what remains after satisfying the previous gifts. Hill on Trustees, 508. Such is the settled law both in England and the United States, though cases do not often occur for its application.

The heir, however, is not to be disinherited except by clear words importing the intention of the testator. Legacies are primarily to be paid out of personalty, and that fund is exclusive, unless the testator charges the same upon the realty, either expressly or by necessary implication.

There seem to be a number of authorities to the effect that a general legacy followed by a residuary disposition, as "all the rest and residue of my estate, real, personal and mixed," etc., will be a charge upon the realty when the personalty is insufficient, and that this is especially true where the devisees are to be executors. But the rule is not applicable to a case where the testator, first dealing exclusively with his personal estate, allots certain portions of it to several objects, and then disposes of the residue of his real and personal estate. 2 Jarman on Wills, 551. But there is no direction in the present will that the executors (devisees) shall pay either debts or legacies. The language used by testatrix clearly indicates that she was dealing with her personal estate exclusively, then sufficient to meet the allotments made of it, and which, upon certain contingencies, should revert to her estate and pass under the residuary devise. Hence these legacies can not be charged upon the realty, and the present bill can not be sustained under this

branch of the case, if indeed the question is properly presented in the bill herein. It is to be further observed that the lien created by charging legacies upon realty is in favor of the legatee, and to be enforced by bill filed, if at all, by such legatee against the devisee or heir-at-law and not by the executor.

4. The present bill can not be sustained simply as a bill to take the testimony of witnesses.

If the will be valid here as to personalty, the remedy in the Orphans' Court is complete and adequate, and, so far as the codicil is concerned, it only affects the personalty. If the right, interest, or claim could possibly be made the subject of an immediate judicial investigation in an action brought by the party who commences a suit to perpetuate testimony, such suit would for that reason be dismissed. 1 Pom. Eq. Jur., Sec. 211.

Mr. Justice MORRIS delivered the opinion of the Court:

As the questions of law involved in the case are suggested by the grounds assigned for the demurrer, it is proper that these should be stated. They are five in number, as follows:

1. That the courts of Louisiana had acquired jurisdiction of the cause and of the issues therein, and of the subject-matter of controversy; and that the proceedings were there pending undetermined, that being also the place of domicile of all the parties.

2. That inasmuch as the bill of complaint admitted the invalidity of the will as a disposition of personal property, such personal estate should not be subjected to the payment of the two legacies mentioned.

3. That inasmuch as these legacies are neither expressly nor by necessary implication made a charge upon the realty of the decedent, the complainants therefore are not entitled to any relief whatever in respect thereof.

4. That in as far as the bill seeks to perpetuate the tes-

timony of the attesting witnesses and to establish the validity of the will and codicil, the Supreme Court of the District of Columbia, as a court of equity, was without jurisdiction.

5. That the complainants showed no ground in their bill for equitable relief.

We are not advised upon which of these grounds the learned justice, who rendered the decree appealed from, rested his decision, or whether he held all of them to be well founded. We are of the opinion that no one of them is tenable.

1. The first ground of demurrer is to the effect that the courts of the State of Louisiana had jurisdiction of the parties, had acquired jurisdiction of the subject-matter of controversy ; that proceedings were there pending undetermined with respect to the very same question sought to be litigated here ; and that, therefore, in pursuance of the rules of comity, which, it may be admitted, now more than ever govern the relations to each other of courts of different jurisdictions, it would be proper to stay proceedings here to await the result of the litigation between the parties in the State of their domicil. But it is very clear to us that there is here no question whatever of comity. The courts of Louisiana have no jurisdiction of the subject-matter of this suit, and can not by any possibility acquire such jurisdiction.

It is well settled law, so well settled that we must regard it as elementary, that the validity of a will of real estate is to be determined by the laws and by the courts of the jurisdiction in which such real estate is situated, and not by any other law or by any other tribunal. *Kerr* v. *Moon,* 9 Wheat. 566 ; *McCormick* v. *Sullivant,* 10 Wheat. 192 ; *Okie* v. *Bennett,* 11 How, 33 ; 3 Amer. & Eng. Encyc. L. (1st Ed.), Title, Conflict of Laws, 632, where the cases upon the point are collected. And this is the doctrine in the State of Louisiana, as well as elsewhere. *Lewis's Case,* 32 La. Ann. 387 ; *Hughes* v. *Hughes,* 14 La. Ann. 85 ; *Dunbar's Case,* 5 La. Ann. 159. In fact in the very proceedings to which refer-

ence is had as having been instituted by two of the appellees in this case in the courts of Louisiana, and to which by the demurrer it was sought to have the courts of the District of Columbia defer, the Supreme Court of that State has emphatically reaffirmed the doctrine. In its opinion rendered on April 4, 1898, it said:

"No decree of the court here could give or take away any right in respect of landed property in another State possessed by the deceased at the time of her death, the title to which depended upon any will she left. The validity of such will, and its effect as conferring title to land in another State, were questions for the courts of that State, and beyond the jurisdictional power of our courts."

The rule that, when one court of competent jurisdiction has the parties before it, and has acquired control of the subject-matter of controversy, another court of equally competent jurisdiction will not interfere while proceedings are pending in the former tribunal, has no application in the present case, for the reason already stated, that the courts of Louisiana have not acquired, and could not acquire, jurisdiction of the subject-matter of this suit.

2. The second ground of demurrer, which is to the effect that, in view of the admitted invalidity of the will as one of personalty, the personal estate of the deceased should not be subjected to the payment of the legacies mentioned in the will, is plainly irrelevant, since the bill of complaint does not ask any such appropriation of the personal assets. The prayer of the bill of complaint is for the establishment of the will as a will of real estate, for the perpetuation of the testimony of the attesting witnesses, for instruction to the complainants as trustees in respect to the payment of the legacies, and for general relief. It does not follow that all these things might not properly be done, even though the personal estate of the decedent should not for any reason be available for the satisfaction of the legacies, especially when it is apparent that the personal estate in any event is wholly insufficient to discharge them.

3. Nor do we regard the third ground of demurrer as more tenable than the second. The proposition here is that the complainants are not entitled to any relief in equity, because the legacies are not, either expressly or by necessary implication, made a charge upon the real estate of the decedent. It is a sufficient answer to this to say, in accordance with well-settled principles of law, that the legacies are here by necessary implication made a charge upon the whole estate of the decedent. This precise question was long since determined by the Supreme Court of the United States, in the case of *Lewis* v. *Darling,* 16 How. 1, and the authorities are well-nigh unanimous upon the subject. In the case cited the Supreme Court said:

"The rule in such a case is, that where a testator gives several legacies, and then, without creating an express trust to pay them, makes a general residuary disposition of the whole estate, blending the realty and personalty together in one fund, the real estate will be charged with legacies; for, in such a case, the 'residue' can only mean what remains after satisfying the previous gifts. Hill on Trustees, 508. Such is the settled law, both in England and in the United States, though cases do not often occur for its application. Where one does occur, a legatee may sue to recover the legacy, without distinguishing in his bill the estate into the two kinds of realty and personalty, because it is the manifest intention of the testator that both should be charged with the payment of the money legacies. Nor does this conflict at all with that principle of equity jurisprudence, declaring that generally the personal estate of the testator is the first fund for the payment of debts and legacies. The rule has its exceptions, and this is one of them." And numerous cases are cited.

In view of this decision further elaboration of this point would be unnecessary and useless.

4. The fourth ground of demurrer is that a court of equity is without jurisdiction either to establish a will of real estate

or to perpetuate the testimony of the witnesses who have attested the instrument. This proposition, likewise, we must regard as wholly unsustained either by reason or by authority.

The argument advanced in support of the proposition seems to be founded on the statement, frequently to be found both in the text-books and in the reports of adjudicated cases, that the cognizance of wills of personal property is for the probate courts, and the cognizance of wills of real estate is for the courts of common law. But the argument is a palpable misapprehension of the statement, in so far as it is sought to be inferred that courts of chancery have no function whatever in the premises. Undoubtedly, the general rule is as stated; but this does not preclude the intervention of a court of equity, whether the will be one of realty or one of personalty, when a case arises otherwise proper for the cognizance of that court. Especially has the matter of the establishment of wills of real estate and of the prepetuation of the testimony of the attesting witnesses thereto, become so well settled as a branch of equity jurisprudence as to have long since ceased to be open to question Story's Equity Jurisprudence, Secs. 1445 to 1449.

Mr. Justice Story says: "It is often the primary, although not the sole, object of a suit in equity brought by devisees and others in interest, to establish the validity of a will of real estate; and thereupon to obtain a perpetual injunction against the heir-at-law and others to restrain them from contesting its validity in future." Sec. 1447. And again: "If, however, the devisees have no further present object than merely to establish the will by perpetuating the testimony of the witnessses thereto, this may be done by a proper bill for the purpose; and the latter is indeed what is usually meant by proving a will in chancery." Sec. 1448.

It is quite obvious, of course, that the jurisdiction of equity will not be maintained, even in case of fraud or mistake, in favor of a person to whom a suit in ejectment or

other proper proceeding at common law is open; for then the remedy at common law would be adequate and complete. *Case of Broderick's Will,* 21 Wall. 503; *Ellis* v. *Davis,* 109 U. S. 494; *Perry* v. *Sweeny,* 11 App. D. C. 404; *Chase* v. *Winans,* 59 Md. 475. But it is conceded by all the authorities that a bill in equity will lie, at the suit of a devisee in possession, to perpetuate the testimony of the witnesses to a will devising lands, against the heir-at-law who disputes the validity of the will; or a bill in the nature of a bill of peace to establish the will and the title of the devisee and perpetually to enjoin the heir-at-law; or where there is a trust to be enforced; or where there is some legal impediment to the party's right to maintin an action of ejectment. *Ellis* v. *Davis,* 109 U. S. 494; *Chase* v. *Winans,* 59 Md. 475. Here the devisees under the will appear to be in possession of the property; and it is alleged that two of the heirs-at-law dispute the validity of the will. It is not apparent, therefore, what legal remedy there is open to the devisees, in order to establish the will or to establish their title to the property, other than a bill in equity of the character of the one now before us.

This bill, it is true, is not filed by the appellants as devisees under the will to establish the will, or their title under it, against the heirs-at-law, although this would be the incidental effect of a decree in accordance with the prayer of the bill. The primary purpose of the proceeding is to enforce a trust created by the will, and to have the aid and direction of the court to the complainants in the performance of the trust; and this, of course, is so clearly proper for a court of equity that it is unnecessary to consume time or space in the citation of authorities in support of its right to entertain such a bill. That the complainants are designated as executrices, as well as trustees, is plainly of no consequence. They allege in the bill that they sue in both capacities; and their right to maintain the bill as trustees can not reasonably be doubted.

It was unnecessary to cite the case of *Fingal* v. *Blake*, 1 Malloy's Irish Chan. Rep. 113, or any other case, in support of the elementary proposition of law, that an executor, as such, has no right to resort to a court of equity for the purpose of establishing a will of real estate for the payment of debts or legacies, or for any other purpose.   The executor, as such, it is well known, has nothing whatever to do with real estate, unless some duty in connection therewith has been devolved upon him by statute law.   But when the executor is also constituted a trustee by the will, then, by the unanimous tenor of all the authorities, he is entitled to have recourse to a court of equity to aid him in the performance of his trust.   The very case cited by the appellees, and upon which they seem most to rely for the contrary doctrine, that of *Fingal* v. *Blake, supra,* distinctly sustains this proposition.   In that case the Irish Court of Chancery said:

"Although a charge for debts created by will on real estate in aid of a personal estate does not entitle the executor to sustain a suit to establish the will against the heir, his duty being confined to administering the (personal) assets, and leave the parties who become interested in the realty to work out their interest as they can, *yet if one of the executors is also a devisee in trust, such suit is proper.*"

And although that is precisely the condition in the case now before us—namely, that the executrices are also devisees in trust—yet it is evident that it is because they have a trust to perform with reference to the real estate, and not because they happen to be devisees also, that they have a right to resort to a court of equity.

These executrices are charged by the testatrix in her will to raise from her estate the sum of ten thousand dollars, which sum, under the circumstances, as we have seen, necessarily is made a charge upon the whole estate, both real and personal; to invest this sum for the benefit of the legatee named as the beneficiary of it, an infant of tender

years; to apply the interest to the proper education of that infant, and to pay the principal to her upon her coming of age. Here was undoubtedly a trust created of a most sacred character. That trust could be performed only by raising the money from the real estate, at least in part; for whether the will was invalid or not as to the personalty, it is very evident that the personalty, even if available for the purpose of its payment, is wholly insufficient. It became incumbent on the trustees to raise the fund. This it was impossible to do without establishing the title of the devisees under the will, and perpetuating the testimony of the witnesses for the purpose. A case more proper for the intervention of a court of equity can not well be imagined.

5. The fifth and last ground of demurrer is merely a general allegation of want of equity in the bill of complaint. But as neither in the brief filed on behalf of the appellees, nor otherwise, have we any suggestion of objection to the right of the complainants other than those already stated, and which we have found to be untenable, it does not appear that this general allegation requires any special consideration from us.

It is our opinion, therefore, that the demurrer interposed by the appellee, Virginia B. Ferguson, is unfounded in law, and should not have been sustained. And it follows that we must reverse the decree of dismissal of the bill from which the present appeal has been prosecuted, and remand the cause to the Supreme Court of the District of Columbia, with directions to overrule the said demurrer, and for such further and other proceedings therein according to law as may be just and proper, and are not inconsistent with this opinion. *And it is so ordered.*