# JOHNSON *v.* WASHINGTON LOAN & TRUST COMPANY.

---

WILLS; REMAINDERS; DECREES; ESTOPPEL.

1. The first principle in the construction of a will, to which all other rules must bend, is that the intention of the testator, as expressed in his will, shall prevail, if not inconsistent with settled rules of law.

2. Where the intention of the testator, as expressed in his will, is uncertain, and the question involved is whether the will creates a vested or contingent remainder, the following rules of construction will be applied: (1) The law will not construe a remainder to be contingent when it can be taken to be vested; (2) estates shall be held to vest at the earliest possible period unless there is a clear manifestation of the intention of the testator to the contrary; (3) adverbs of time, as "where," "there," "after," "from," etc., in a devise of a remainder, are construed to relate merely to the time of the enjoyment of the estate, and not the time of vesting in interest. (Following *O'Brien* v. *Dougherty,* 1 App. D. C. 148; *Richardson* v. *Penicks,* 1 App. D. C. 261; *Hauptman* v. *Carpenter,* 16 App. D. C. 524.)

3. A testator leaving a widow, three sons and five daughters, after devising his homestead to his wife for life, and expressing his desire that it should be kept as the home for his daughters so long as they should remain unmarried, devised that portion of his estate, after his wife's death, "to my daughters being single and unmarried and to the sur-

vivor and survivors of them so long as they shall be and remain single and unmarried and on the death or marriage of the last of them, then I direct that the said estate shall be sold by my executors and the proceeds thereof be distributed among my daughters living at my death and their children and descendants *per stirpes.*" Other language of the will relating to other interests devised and bequeathed indicated an intention that such interests should vest in his children living at his death, the children of those dying in the meantime to be substituted for their deceased parents. It was *held* that the daughters, who were all living at the death of the testator, took a vested, and not a contingent, interest in the homestead, to come into possession and enjoyment upon the termination of the life estate of the wife and the death of the last surviving daughter unmarried, and that the interest vested upon the death of the testator. (Citing *Hauptman* v. *Carpenter,* supra.)

4. Where, in an equity suit, the question involved is whether the complainant, who claims title to land under certain devisees, on the theory that they took a vested remainder under their father's will, is the owner, or the defendants, who claim that such devisees took a contingent remainder only, and the complainant's title is based upon a sale in a partition suit to which all such devisees, but not the defendants, were parties, and it is found that the devisees took a vested interest, to come into possession upon the happening of a future contingency, the question will not be considered whether the court in the partition suit had the power to advance the time of the sale of the property upon the petition of the parties interested to a time preceding the happening of the contingency, as the parties taking advantage of the decree would be estopped to impeach it, and the defendants have no right, title, or interest to do so.

No. 1900.   Submitted October 15, 1908.   Decided April 7, 1909.

HEARING on an appeal by the defendants from a decree of the Supreme Court of the District of Columbia, sitting as a court of equity, in a suit to remove cloud from title.   *Affirmed.*

The COURT in the opinion stated the facts as follows:

This suit was begun by Henry P. Sanders against the appellants, Alexander D. Johnson, Elise Thomas Berry, Louise Y. B. Duvall, Imogene Berry Tubman, et al., who are the descendants of three of the daughters of Washington Berry, de-

ceased, to remove cloud from title to certain parcels of land in
the District of Columbia, parts of a tract called Metropolis
View, of which the said Washington Berry was seised and
possessed at the time of his death, in 1856. Complainant avers
that he is seised as of fee of said parcels of land, which were
conveyed to him by deed from Lydia A. Edmonds, December
15, 1905, that said Metropolis View tract, containing about 410
acres of land, was owned and occupied by Washington Berry as
a home at the time of his death, in 1856. That complainant
derives his title to the said parcels through certain conveyances
of record and under and through certain proceedings and de-
crees had and passed by the supreme court of the District of
Columbia in equity cause No. 500, begun September, 1865,
wherein Anna Maria Middleton and other persons named were
defendants, the said defendants comprising the children of said
Washington Berry. It was alleged in the bill in that cause that,
at the time of his death, said Washington Berry had five daugh-
ters and three sons living, and was survived by his widow, Eliza
Thomas Berry. That by will made in 1852, the said Washing-
ton Berry devised the said Metropolis View tract, which was
his homestead, to his said widow for life, and provided that said
estate should be kept and reserved as a home for his daughters
so long as they should remain single and unmarried, and after
the death of his said widow he devised the said estate to his
daughters being single and unmarried, and, on the death or
marriage of the last of them, directed that said estate should be
sold by his executors, and proceeds of the sale distributed among
his daughters living at his death, and their children and de-
scendants *per stripes*. That Eliza Thomas Berry and Wash-
ington L. Berry were appointed executors of said will. The
said Eliza Thomas Berry assumed the office of executrix and
Washington L. Berry declined. That, at the death of testator,
all of his said daughters were unmarried except Anna Maria,
who was intermarried with John A. Middleton. That the rest
of said daughters had, except said Eliza Thomas, who remained
single, married, and that all of the said children and heirs at
law of testator had attained the age of twenty-one years, ex-

cept Rosalie Eugenia, who was then eighteen years of age. That the said estate of Metropolis View was not capable of advantageous partition among the said daughters, and, if so capable, partition could not be made, owing to the nonage of said Rosalie Eugenia, and that the sale of said real estate would be to the interest and advantage of said infant as well as of the other devisees thereof. That the said Eliza Thomas, the only one of said devisees unmarried, was willing to relinquish her right to the possession and enjoyment of said estate whilst unmarried, and to assent to the sale thereof and the equal division of the proceeds of sale irrespective of such right of possession and enjoyment. That during the late war the said estate had been mainly in the occupation of soldiers, by whom much injury had been done thereto, and the rents and profits had not been sufficient to pay taxes and make repairs. That the vault reserved by said will had been destroyed, so that it was necessary to remove the bodies therein deposited, and that, in consequence of said destruction, all of the aforesaid heirs at law were willing that said burial ground should be sold with the residue of said estate, and that the proceeds of said burial ground should be equally distributed among all of said heirs at law. That the purchase and maintenance of said estate by said sons of said testator, or some of them, was impracticable for want of means, and that the retention of said burial ground and vault after the residue of said estate had passed into other hands, would not be in accordance with the intention of the testator. Complainant alleges that all of the defendants to said equity cause No. 500 appeared and answered said bill, consenting to the relief prayed for therein, the said Rosalie Eugenia by a guardian *ad litem,* appointed in her presence and with her consent by the court. That the said Eliza T. Berry, in and by her answer, stated that she was willing to relinquish, and thereby did relinquish, upon the sale of the estate in the bill mentioned, her right to the possession and enjoyment thereof whilst unmarried, and consented to the distribution of proceeds of sale as prayed by said bill. That said equity cause No. 500 was thereupon referred to the auditor of the court on the 19th of September, 1865, with

direction to take testimony and report the same to the court, and also whether the sale of the real estate in the bill mentioned would be to the interest of the infant defendant in said cause. The said auditor took depositions, and, on September 27, 1865, submitted a report wherein he stated that Washington Berry had died in 1856, seised of the property consisting of a large mansion and 410 acres of land, having by his will of the 28th of July, 1852, given the same, as well as portions of his personal property, to his wife for life for the education and support of their five daughters, the same to be kept as a home for them as long as they or either of them should remain unmarried, and, on the death or marriage of the last, his wife being dead, he directed the said estate to be sold and the proceeds divided among his said daughters, reserving the family burial ground to his heirs, and urging some of his sons to purchase the homestead, that it might be kept in the family. He further reported that the widow of said testator had, shortly after his death, discontinued her residence at the said homestead, and removed with her family to the city of Washington, and had since died; that all of said daughters had married except said Eliza T., who had not resided at said homestead since her mother left it, and had offered to give up her right of occupation so as to advance the period of sale directed by the testator. That said witnesses had described the property as being an unfit residence for the unmarried daughter, and the land as being generally poor and unproductive as a farm, and that the buildings and fences had become much out of order and repair, and that it would be to the interest of all the parties that it be sold and in parcels, and that all the devisees desired a sale, and that none of the testator's sons was in a condition to become a purchaser; that it was a fit case for sale. That, thereupon, the court passed a decree directing that the said land, with appurtenances, be sold, and appointed John A. Middleton and Thomas W. Berry trustees to make such sale, and authorized them, in their discretion, to divide into parcels the said real estate, and sell the same so divided, instead of as a whole, and, on the final ratification of such sales and the payment of the purchase money, to convey to the pur-

chaser or purchasers in fee simple the property to him or her or them sold. That the trustees appointed by said decree divided said land into lots numbered from 1 to 36, inclusive, and made sale of certain of them at public auction to John McGuire in October, 1865, and subsequently, in 1868, upon the petition of Mary E. L. Johnson and Rosalie E. Berry, two of the defendants, stating that they had families and children to support and were in need of money which would come to them in case of a sale of said real estate, the court ordered the said trustees to sell the residue of said estate, and said trustees thereafter sold at public sale the remaining lots in said subdivision, the sales aggregating over $100,000, all of which was subsequently ratified on, to wit, October 12, 1868, and the trustees authorized to convey said lots to the respective purchasers thereof. The names of the purchasers are then given. Among these appear sales to Eliza T. Berry, John A. Middleton, Rosalie E. Berry, A. Louise Berry, and Mary E. Johnson, all parties to said proceeding. That said deeds were duly recorded between the years 1866 and 1877, and that, in the interval between this and the filing of this bill, the said Metropolis View was divided into hundreds of separate parcels or holdings with different owners, and is now so held. That all of said titles have been passed and approved without a question of doubt by all lawyers and title companies engaged in examining and passing titles; that through said conveyances the complainant derived title to the parcels of land described in this bill, and he and those under whom he claims have, for thirty-five years or more, been in exclusive and continuous possession and control of the same, paying all taxes and assessments, and relying upon the validity of their title, acquired bona fide for a valuable consideration, without notice or suspicion of the hostile or adverse claim now set up by the defendants.

The bill further avers that, on the 1st day of August, 1906, the defendants herein, naming them, filed suit in the supreme court of the District of Columbia against certain other of the defendants herein, averring in substance, among other things, that, in the year 1856, Washington Berry, grandfather of all

the parties to said cause, departed this life seised and possessed of the tract of land known as Metropolis View; that he left surviving him as his sole heirs at law three sons and five daughters, naming the same; that he left a will containing the following clause:

"Item 5. It is my will and desire that my said homestead shall be kept and continued as the home and residence of my daughters so long as they shall remain single and unmarried. I therefore first after the death of my wife will and devise the said estate to my said daughters being single and unmarried and to the survivor and survivors of them so long as they shall be and remain single and unmarried, and on the death or marriage of the last of them I direct that the said estate shall be sold by my executors and the proceeds thereof be distributed among my daughters living at my death, and their children and descendants (*per stirpes*), and I hereby reserve to my heirs the family vault and burial ground embracing half an acre of ground around and having the said vault as a center and on such sale as aforesaid by my said executors I earnestly enjoin it on my sons or some of their sons to purchase the said homestead that it may be kept in the family."

A copy of said entire will is made an exhibit to the bill.

In the two first items of said will testator devised to each of his two sons in fee certain lands described therein, each being upon condition that the devisee shall execute deeds to his said daughters of certain lands devised to them by their grandfather. Item 3 devises another tract of land to his other son in fee. Another item is to the effect that, although in the devise hereinbefore made to the three sons the testator used words of inheritance, yet he expressly annexed to the estates so given to them this limitation, that, if either of them shall die without leaving lawful issue, the estate of each one, or both, if more than one, shall go to the survivor or survivors, his and their heirs. Item 4 gives the Metropolis View estate to his widow for life and also certain stocks and all rents and money on hand or which may be due on bonds, bills, or notes, subject, nevertheless, the whole and every part of the said bequest to my said wife in the first

place to the proper and comfortable support and maintenance and education, according to their condition and prospects, of my five daughters (naming them) so long as they and each of them remain single and unmarried, and upon their marriage and birth of issue of each and every one of them respectively to pay and deliver to such one or more so married and having issue her just, full, and equal one sixth part of the personal estate so as aforesaid given to my said wife.

Item 5, heretofore copied, then follows.

Item 6 directs that the executors shall divide and distribute all the rest and remainder of the personal estate among the testator's children at his death, and the descendants of such as may have died during his life to take a parent's part.

Item 7 provides for revoking every devise and bequest made to any one of his devisees or legatees who shall institute any action to set aside the will. Eliza T. Berry, wife, and W. L. Berry, son, were appointed executors. The will is dated July 28, 1852.

The said bill last referred to further averred that Eliza T. Berry, widow, died in 1864; that all of testator's daughters married, except Eliza T. Berry, who never married, and died in March, 1903. Said bill then set out in detail the relationship of the parties to said cause to the said Washington Berry, showing complainants therein to be children of the daughters, other than Eliza T. Berry, of the said testator, and alleged that if the legal title to said property was vested in either the decedent, Eliza T. Berry, or the decedent, Washington L. Berry, said title is now vested in the parties to said cause, or some of them. The bill further alleged that, under the terms of the will of testator, upon the death of Eliza T. Berry, the daughter of testator, the entire equitable interest in said real estate vested in fee simple in the complainants to said bill; that by court proceedings in the case of Middleton v. Berry, No. 500, heretofore referred to, said Middleton and another were appointed to sell said land, and through deeds executed by them, said land was attempted to be sold and conveyed to various persons, and all of said land is now held by persons claiming adversely to com-

plainants. That when said bill was filed and said sales were
made by said trustees, the complainants Alexander D. Johnson,
Elise Thomas Berry, John H. Berry, Leila T. Berry, Albert L.
Berry, and John A. Middleton were in existence; that they
were all minors and none of them were made parties to said
suit, or in any wise represented therein. Complainants there-
fore averred that their rights and interests in said lands were
not affected by the proceedings in said case or by the said sales,
and they prayed for process and general relief, that a trustee
might be appointed in place of said Eliza T. Berry and Wash-
ington L. Berry, named as executors in said will, and that the
legal title vested in the parties to said last-mentioned suit, or
any of them, be transferred to such trustee, to be appointed by
decree of this court. The complainant in the present bill avers
further, that, on the 20th of February, 1907, a decree was passed
in said equity cause No. 26,464, appointing the defendants
Thomas W. B. Middleton and Eugene Benton Berry trustees
under the last will and testament of Washington Berry; that,
since the passing of said decree, no further proceedings have
been had in said cause or by said trustees, to enforce any claim
or demand they may have against this complainant by virtue of
the said will and of said decree. That, upon the proper in-
terpretation thereof, and the interpretation declared in said
equity cause No. 500, and by virtue of the proceedings had
therein and the conveyance made thereunder, a good and in-
defeasible title in fee simple to said real estate passed to and
became vested in the purchaser from the said trustees, John A.
Middleton and Thomas W. Berry, and that said title passed, by
mesne conveyances, and is now vested in the complainant to this
suit. That complainant has also acquired and has a good and
indefeasible title to said real estate by adverse possession; that
no claim or demand has been made upon him or those under
whom he claims in regard to his title to said real estate until the
said equity suit No. 26,464 was brought by the said defendants
hereto, and which is now pending in this court. That said
claim, if it existed, was unknown to complainant. That the
claims and averments contained therein create a cloud upon

complainant's title, and the menace of future litigation of such a public and notorious character that, although the same does not create a *lis pendens* as to complainant, it effectually prevents him from disposing of his property, either by sale or by encumbrance, and prevents examiners of titles from passing his title without mention of said pending cause. That the value of the land described in the bill is over $5,000. Complainant further avers that he is advised that the construction given by the court in said equity cause No. 500 as to the effect of said will of Washington Berry to vest in his daughters living at his death the absolute interest in the proceeds of sale, and the right to have advanced the time for sale and distribution, the prior purposes and trusts having been accomplished, and the construction given to wills containing similar provisions, by said court and others, establish beyond question the validity of the titles derived through the aforesaid equity cause No. 500.

The prayer is that complainant's title be declared complete and perfect, and that the defendants, each of them, may be perpetually enjoined from asserting any title, by sale or otherwise, or making any claim to or demand against said real estate, or any part thereof, as against said complainant, his heirs or assigns, and especially that the trustees aforesaid be restrained and enjoined from further proceedings, either in law or equity, or in any other manner, and from further asserting or claiming any right, title, or interest in and to the real estate described in complainant's bill.

As exhibits to said bill are filed the conveyance under which complainant claims, a transcript of the record in said equity cause No. 500, heretofore referred to, showing the order and decree therein, and the will of Washington Berry.

The answer to said bill admits the general facts alleged in the complainant's bill in regard to the will of Washington Berry, the names, ages, and conditions of his several children, and the proceedings set out in said bill. The answer further says that certain of the defendants were living at the time of the filing of the bill in said cause No. 500, and others have been born since, but avers that these defendants are advised

that since none of them who were born before said equity pro-
ceeding No. 500 were made parties thereto, and since these de-
fendants, born and unborn at that time, were not in any wise
represented in said equity cause No. 500, neither the decree
made therein nor any sale made in pursuance thereof is of any
effect against these defendants or any of them. They aver that,
upon the proper interpretation of the will of Washington Berry,
they are the legal or equitable owners in fee of the real estate de-
scribed in the bill, and that the proceeding in said equity cause
and the conveyance made by the trustees therein did not and
do not in any wise affect the said title and ownership of defend-
ants in said land. They admit the possession of complainant of
the land, but they say that same was not adverse to them until
May, 1903, because, while they had a legal or equitable interest
in fee simple in said land, they had no right of entry until May,
1903, when said Eliza Thomas Berry, last survivor of the
daughters of Washington Berry, died, never having been mar-
ried. They admit that they did not themselves assert any inter-
est or title in or to any part of said land until after the death
of said Eliza Thomas Berry. They admit that they have a
claim and have asserted and intend to assert, that they are the
legal or equitable owners in fee of the land described in the
bill of complainant, as well as of the whole of said Metropolis
View tract. They admit that their claim is a cloud upon the
title of complainant (if the complainant have any such title,
which is denied), and that the complainant is thereby prevent-
ed from disposing of the property by sale or by encumbrance.
They admit that the value of the land described in the bill
is over $5,000. They aver that the only reason the trustees
appointed in said equity cause No. 26,464 did not proceed at
once to sell said tract called Metropolis View was that several
of the persons claiming parts of the same adversely to defend-
ants were, and for a long time continued to be, engaged in
negotiation looking to the bringing of a test suit or suits to de-
cide once and for all, and with as little expense and delay as
possible, the proper construction of that paragraph of the will
of Washington Berry under which these defendants claim title.

Being so advised, they deny that the effect of said will was to vest in the daughters of Washington Berry the absolute interest in the proceeds of the sale of Metropolis View, and deny that said daughters or any of them had the right to have advanced the time for selling and distributing the proceeds under the terms of the will of Washington Berry.

After replication filed, testimony was taken. Complainant introduced the transcript of the records of the different equity suits described in the bill and of the proceedings therein, together with orders confirming the sales made by the trustees. He introduced testimony, also, of several officers of title insurance companies in the District of Columbia, who testified that they had passed the titles to the said property on the ground that, under the construction of the will, Item 5 vested an absolute title in the daughters of said Washington Berry, and that the proceedings advancing the sale were regular and binding.

Defendants introduced proof identifying the various defendants in the bill as descendants of the daughters of Washington Berry, all of whom are parties to the suit.

Before decree rendered, the complainant Henry P. Sanders died, leaving a last will and testament, appointing the Washington Loan & Trust Company executor and trustee, and, upon petition of said company, it was made a party complainant in place of said Henry P. Sanders, deceased, with right to prosecute said cause to final hearing and decree.

On hearing, the court granted the prayer of the bill ordering a perpetual injunction against the defendants, or any of them, from asserting any title, claim, or demand against the said land. From that decree this appeal has been taken.

*Mr. A. S. Worthington* for the appellants.

*Mr. B. F. Leighton* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The determination of this case turns upon the construction of the will of Washington Berry, particularly the fifth item thereof, which reads as follows: "It is my will and desire that my said homestead shall be kept and continued as the home and residence of my daughters so long as they shall remain single and unmarried. I therefore first after the death of my wife will and devise the said estate to my said daughters being single and unmarried and to the survivor and survivors of them so long as they shall be and remain single and unmarried and on the death or marriage of the last of them then I direct that the said estate shall be sold by my executors and the proceeds thereof be distributed by my said executors among my daughters living at my death and their children and descendants (*per stirpes*) and I hereby reserve to my heirs the family vault and burial ground embracing half an acre of ground and having the said vault as a center and on such sale as aforesaid I earnestly enjoin on my sons or some of their sons to purchase the said homestead that it may be kept in the family.".

The testator had three sons, to each of whom, in earlier items of said will, he devised certain lands in fee. The first two sons were required, as conditions precedent to the taking effect of said devises, to convey their interests in certain lands devised to them by their grandfather, to the testator's daughters, "jointly to their heirs and assigns."

An unnumbered item following item 3 expressly annexed to the several estates devised to said sons, "this limitation that if either of them shall die without having lawful issue that the estate of each one or both if more than one shall go to the survivor or survivors his and their heirs."

Item 4 devised and bequeathed to testator's wife, for and during her natural life, the homestead estate of Metropolis View, certain stocks, and all money in hand or due by bill, bond, note, or otherwise, "subject nevertheless the whole and every part of the said bequest to my said wife in the first place to the

proper and comfortable support and maintenance and education according to their conditions and prospects of my five daughters (naming them) so long as they and each of them shall remain single and unmarried and upon their marriage and birth of issue of each and every of them respectively to pay and deliver to each one or more so married and having issue her just, full and equal sixth part of the personal estate so as aforesaid given to my said wife."

Item 6 reads as follows: "I direct that my executors shall divide and distribute all the rest residue and remainder of my personal estate among my children at my death and the descendants of such as may have died during my life to take a parent's part."

The will was executed in 1852, and testator died in 1856. All of the daughters survived him. One married, but had no child prior to his death. After his death, three other daughters married, and all had children, who are the appellants in this case. Eliza Thomas Berry, the last daughter, was never married, and died in May, 1903. The widow and one of the sons were appointed executors of the will. She assumed the duties of executor; the son declined. The widow died in 1864.

The two principal contentions of the appellants are thus stated in their brief:

"1. Under the general rule relating to the construction of wills, to which all other rules are subordinate, that the plainly expressed intention of the testator is to be carried into effect, unless in conflict with some established rule of law, item fifth of the will of Washington Berry must be held to have vested an equitable fee simple in Metropolis View in the children of the daughters of Washington Berry who were living when his last surviving daughter, Eliza Thomas Berry, died unmarried. 2. As there is in this will no direct gift by the testator to his daughters, nor even to trustees of that remainder for their benefit, but a mere provision that after the happening of certain events the property shall be sold, and the proceeds of the sale paid to a certain class or certain classes of persons, the remain-

der was not vested when he died, and those only take who were in existence when the precedent estate terminated."

The contention of the appellee, on the other hand is: "The daughters of Washington Berry took under his will a life estate in Metropolis View, to take effect in possession upon the death or determination of the life estate of their mother, Eliza T. Berry, therein, to terminate on their marriage; and also, at the death of testator, a vested remainder in fee, to take effect in possession on the marriage of all of them, or the death of the last unmarried daughter."

The following definitions of vested and contingent remainders are given in the opinion of Mr. Justice Swayne in *Doe ex dem. Poor* v. *Considine,* 6 Wall. 458, 474, 18 L. ed. 869, 874: "A vested remainder is where a present interest passes to a certain and definite person, but to be enjoyed *in futuro.* There must be a particular estate to support it. The remainder must pass out of the grantor at the creation of the particular estate. It must vest in the grantee during the continuance of the estate or *eo instanti* that it determines. A contingent remainder is where the estate in remainder is limited either to a dubious and uncertain person, or upon the happening of a dubious and uncertain event."

Undoubtedly, as declared in *Smith* v. *Bell,* 6 Pet. 68, 75, 8 L. ed. 322, 325, the first and great principle in the exposition of wills, to which all other rules must bend, is that the intention of the testator expressed in his last will shall prevail, if not inconsistent with settled rules of law.

We do not find in the words of the testator such a clear and certain expression of his intention as to enable us to determine between the several contentions of the parties, before stated, without the aid of certain established rules of construction applicable in case of uncertainty. These are: 1. The law will not construe a remainder to be contingent when it can be taken to be vested. 2. Estates shall be held to vest at the earliest possible period, unless there is a clear manifestation of the intention of the testator to the contrary. 3. Adverbs of time, as "where," "there," "after," "from," etc.,

in a devise of a remainder, are construed to relate merely to the time of the enjoyment of the estate, and not the time of vesting in interest. *Doe ex dem. Poor* v. *Considine,* 6 Wall. 458, 475, 18 L. ed. 869, 874; *McArthur* v. *Scott,* 113 U. S. 340, 378, 380, 28 L. ed. 1015, 1026, 1027, 5 Sup. Ct. Rep. 652; *O'Brien* v. *Dougherty,* 1 App. D. C. 148, 157; *Richardson* v. *Penicks,* 1 App. D. C. 261, 264; *Hauptman* v. *Carpenter,* 16 App. D. C. 524, 528.

Applying these rules, we are of the opinion that, by the provisions of the fifth item of the will, the daughters of the testator, who were all living at his death, took a vested interest in the Metropolis View farm, to come into possession and enjoyment upon the termination of the life estate of the wife and the death of the last surviving daughter unmarried. The direction for sale and distribution among the daughters "living at my death" fixes that as the time of the vesting of the right in the said daughters.

It is argued by the appellants that, under this view, a daughter who might predecease the testator would take nothing, a result which, it is said, ought not to be considered as within the intention of the testator. And it was further said that, if a contingent remainder was to be created in the children and descendants of daughters, those words would limit it to the children and descendants of daughters who might be living at the time of the testator's death, and thus cut off the children and descendants of any daughter who might have married after the date of the will, and then died before the testator, having a child or children. On the ground that neither of these results could have been within the intention of the testator, it is argued that the words "living at my death" must be eliminated and given no weight. There are no grounds, however, for eliminating words which indicate a particular intent, unless, at least, they can be shown to be utterly inconsistent with a primary or general intention otherwise clearly manifested. If any such primary intention can be said to be shown in the will it would seem to be that expressly manifested in the sixth item, and indicated more or less in others; namely, that the interests devised and be-

queathed should vest in the daughters living at his death; the children of one dying in the meantime to be substituted for the deceased parent. We do not think that the language of the clause in item 5, "I therefore first after the death of my wife will and devise the said estate to my said daughters," etc., can be held to mean that there was no intention to vest an immediate estate in the daughters, or that the vesting of any estate was postponed until after the death of the wife.

For that reason, the cases cited by appellants, to the effect that where the only gift is a direction to pay a fund at some future time, or is to trustees to sell and distribute the proceeds after the happening of a certain event,—that is to say, where the time or event referred to in the future is of the substance, and a condition of the gift,—do not apply. As we have seen, the settled rule is that estates shall be held to vest at the earliest possible period unless there be a clear manifestation of the intention of the testator to the contrary. And also that adverbs of time, like "after," the word used, are ordinarily construed to relate to the time of the enjoyment of an estate and not to the time of vesting in interest, unless there are other terms clearly indicating a different intention. Similar words to those of the testator are frequently found in wills. The language here used is not substantially different from that involved in the case of *Hauptman* v. *Carpenter,* 16 App. D. C. 524, 526, 529. In that case the will of Daniel Hauptman devised a life estate to three of his numerous children, subject to be defeated by marriage; the interest of one marrying to become vested in the unmarried survivor or survivors. The next paragraph provided that "after the death of all my aforesaid named children. * * * I give, devise and bequeath all of my aforesaid real estate and personal property to my son Francis E. Hauptman upon the trusts following, to sell," etc., and distribute the proceeds among testator's children and their respective descendants if they or any of them are dead, etc. The three life tenants died unmarried, one of them only before Francis E. Hauptman, who died leaving no issue. It was held that Francis E. Hauptman took a vested estate which passed under his will. It

was said: "Tested by the definitions heretofore given of vested and contingent remainders, it would seem that the devises made in the will of Daniel Hauptman fully satisfy all the conditions of the former; and we find nothing in the remaining provisions clearly manifesting an intention to create a different estate.   *   *   *   That the estate is ordered to be sold and the proceeds divided after the determination of the life estate, thereby working an equitable conversion of the estate or interests in remainder, is of no importance in determining the character of that remainder." See also *Cropley* v. *Cooper,* 19 Wall. 167, 174, 22 L. ed. 109, 113.

In that case the will provided that Elizabeth Cropley should have an estate for life in certain land; "and at her decease it is my will that the said—[land] be sold, and the avails therefrom become the property of her children or child, when he, she or they have arrived at the age of twenty-one years, the interest in the meantime to be applied to their maintenance." This last item, of importance in our aspect of the case, has no particular bearing on the point now under consideration because this right to maintenance could not accrue until at the death of the life tenant. The court said: "A bequest in the form of a direction to pay at a future period vests in interest immediately if the payment be postponed for the convenience of the estate or to let in some other interest. The payment of debts is an instance of the former, and a prior temporary provision for some other person, as for Elizabeth Cropley, in this case, is an instance of the latter. In all such cases it is presumed that the testator postponed the time of enjoyment by the ultimate legatee for the purpose of the prior devise or bequest. A devise of lands to be sold after the termination of a life estate given by the will, the proceeds to be distributed thereafter to certain persons, is a bequest to those persons, and vests at the death of the testator."

In view of the decisions that have been referred to, which declare the law in this jurisdiction, it would serve no useful purpose to review the many cases cited by both parties in support of their respective contentions.

Having concluded that the daughters of the testator took a vested remainder in the Metropolis View homestead, there is no occasion to consider the power of the equity court, exercised in October, 1865, to advance the time of the sale of the same, upon the petition of the parties interested, to a time preceding the death of the unmarried daughter, who waived her right, and consented thereto.

The parties obtaining the benefit of that decree would be estopped to impeach it in any event; and the appellants have no right, title, or interest to furnish a foundation for their impeachment.

We think the third point of the appellants is embraced in the conclusion denounced.

There was no error in the decree granting the prayer of the appellee's bill, and it will be affirmed with costs.    *Affirmed.*

A motion for a rehearing by the appellants was denied, and, on April 20, 1909, an application by them for an appeal to the Supreme Court of the United States was allowed.