## HILL et al..v. FILL et al.
### No. 5210.

Court of Appeals of District of Columbia.
Argued Feb. 3, 1932.
Decided March 7, 1932.

C. H. Merillat and Chas. S. Shreve, both of Washington, D. C., for appellants.

W. W. Millan, of Washington, D. C., for appellee Elizabeth S. Fill. .

Before MARTIN, Chief Justice, and ROBB and GRONER, Associate Justices.

ROBB, Associate Justice.

Appeal from a decree in the Supreme Court of the District overruling an auditor's report and sustaining exceptions thereto by appellee Elizabeth S. Fill, surviving life tenant of the estate of the late Mason N. Richardson.

The construction of the will of Mr. Richardson is involved. It is agreed that he was a lawyer of experience and that he prepared his own will. He died November 7, 1921. He left surviving him his widow (whose

death occurred November 5, 1928), a brother, and several sisters. The widow's mother died January 14, 1930.

The will, dated May 29, 1919, devised and bequeathed to testator's friend, Charles S. Shreve, "all my estate and property, *real and personal,*" in trust, to collect the income, "and after deducting all proper charges, costs, taxes, insurance and repairs," to pay the net income to his wife, Ada F. Richardson, during her life, with the privilege on her part "to occupy any part of said *real and said personal* estate," with power to the trustee to sell, and convey in fee simple, mortgage, invest, and reinvest any part or all of "said estate, *real and personal,*" as he might "deem best for the trusts herein imposed;" and, further, with full power to the trustee to use any or so much of the principal sum of "my said *real and personal* estate" as he might deem proper for the care and support of the widow in the event the trustee should determine that the income was not sufficient for her care and support.

"At and from the death of my said wife, Ada F. Richardson, my said trustee shall pay the net income, rents, and profits from my said *real estate,* after deducting all proper costs, charges, taxes, insurance, and other expenses, unto and equally between my wife's mother, Cornelia V. Fill, and her sister, Elizabeth S. Fill, for and during their joint lives, and from and after the death of either of my said mother-in-law and sister-in-law, to pay the said net income unto and to the said survivor of them, my said mother-in-law and my said sister-in-law." (This we shall refer to as the fourth paragraph of the will.)

Upon the death of the survivor of his wife, mother-in-law, and sister-in-law, he devised and bequeathed "all my said estate both *real and personal,*" of which he should die seized and possessed, "and the unexpended net proceeds therefrom, together with all real estate and personal estate acquired by him by reinvestment, exchange, interest, or otherwise, under this trust, unto the said Charles S. Shreve, in fee simple in and upon the following trusts: '   ' " To sell and dispose of the same and convert into cash, and distribute the net proceeds from time to time; one-fifth to testator's brother, Charles W. Richardson; one-fifth to his sister, Ella S. Du Bois; one-fifth to his sister, Harriet Searle; one-fifth to his sister, Susan R. Oswell; one like fifth to be equally divided between Cornelia, Ada, and Helen, nieces of his wife, Ada F. Richardson. (All italics ours.)

Appellees contend, and the court below found, that the words "net income, rents and profits from my said real estate," as used in the fourth paragraph of the will, were intended to include, and do include, not only the income, rents, and profits from the real estate, but from the personal estate as well.

The testator is no longer able to speak, except through his will. It is our duty to give effect to the plain provisions of that instrument, unless they violate some rule of law. O'Brien v. McCarthy, 52 App. D. C. 183, 285 F. 917; Association of Survivors of Seventh Ga. Regiment v. Larner, 55 App. D. C. 156, 3 F.(2d) 201. It is presumed that a testator, especially a lawyer who writes his own will, uses words adequate to express his intent. Johnson v. Washington Loan & Trust Co., 33 App. D. C. 242. In the present case, the testator first devised all his property, *"real and personal,"* to his friend, the trustee, with directions to pay the net income to his wife. He then clothed his wife with authority to occupy any part of "said *real and said personal* estate." He then clothed the trustee with power to convey in fee simple, mortgage, invest, and reinvest any part of his "said estate, *real and personal,*" as he might deem best. He then clothed the trustee with power to use so much of the principal sum of his "said *real and personal* estate" as he might deem proper for the care of testator's wife, in the event the net income should not be sufficient. Up to this point, the testator was making provision for his widow, and he used the term *"real and personal* estate" four times. He authorized and directed the trustee not only to pay her the net income from his *real and personal* estate, but to use so much of both as might be necessary for her care and support.

We now come to a provision which the testator made for his wife's mother and his wife's sister, in the event his wife should predecease them (the so-called fourth paragraph). Instead of providing that the net income of "said *real and personal* estate" should be paid to them or the survivor of them, he provided that the net income from his "said *real* estate" should be paid them or the survivor of them. This language is unambiguous, and to construe it as including the personal estate would be, to that extent, to make a new will for the testator, which of course we have no authority to do. The intent of the testator is made still more apparent by the next provision in his will dealing with the situation after the death of the widow and her mother and sister; in oth-

er words, when it would be necessary to make a complete distribution of the estate. He therein directs his trustee to convert his estate "both *real and personal*" into cash, and to distribute it as already noted.

Counsel for appellee contends that, unless the life tenants be held entitled to the income from both real and personal estate, "it was in the power of the trustee, by actually disposing of the real estate, to deprive appellee and her mother, and still is in his power to deprive the appellee, of any income whatever." The basis of this contention is the authority given the trustee to sell and convey any part or all of the estate, real and personal, and to reinvest any part of such estate, but this power is coupled with the provision, "as he (the trustee) shall deem best for the trusts herein imposed." The testator assumed that this admonition would be sufficient to prevent the trustee from jeopardizing the interests of the life tenants. Moreover, had he attempted to do so, the doors of the court of equity would have been open to them. It is only fair to state that the apparent confidence of the testator in the trustee was not misplaced.

It is further contended by counsel for appellee that the residuary provision of the will is anomalous because it purports to dispose of all of the estate, both real and personal, of which the testator should die seized and possessed; but this provision is coupled with the words, "and the unexpended net proceeds therefrom, together with all real estate and personal estate acquired by him (the trustee) by reinvestment," etc. The testator evidently entertained the view that the corpus of the estate might remain intact and that there might be "unexpended net proceeds therefrom." He was careful to include all real and personal estate acquired by the trustee by reinvestment, exchange, etc. This latter provision clearly recognizes the authority theretofore given the trustee to make such reinvestments. In other words, properly construed, there is no repugnancy between these provisions of the will.

The will directed the trustee to collect the income from the estate, and "after deducting all proper charges, costs, taxes, insurance, and *repairs*, to pay the net proceeds" to the widow, and, if the net proceeds were not sufficient for her support, to use the principal. At the death of the widow there was due for repairs $2,513.02. The auditor recommended that such repair items be charged against principal and be repaid to principal from income over a period of three years. To this ruling appellees excepted, and the court, in sustaining the exception, ruled that the amount, "having accumulated before the death of the widow of the deceased, Ada F. Richardson, though made thereafter, be charged against the income of testator's estate accrued prior to the death of his said widow and to the extent, if any, that said income shall be insufficient, against the corpus of the estate." This ruling is right. The will expressly directs that "costs, taxes, insurance, and *repairs*" must be deducted from the income. Had the trustee followed that course, he would have defrayed the expense of repairs from the income and resorted to the principal to the same extent.

The auditor found that arrangements had been made to install electric refrigerators in two apartment houses in which the estate owned a half interest, and that the estate's share of the cost was $1,840. The auditor recommended that this be paid from principal, "to be repaid from the income over a period of years to be fixed by the court." Appellants contend that this item should be paid out of principal and be replaced from income on realty. Since the installation of the refrigerators is a capital investment, the cost should be charged to the principal.

The decree is reversed and the cause remanded for further proceedings not inconsistent with this opinion, costs to be borne by the estate.

Reversed and remanded.