**HOWARD et al. v. AMERICAN SECURITY & TRUST CO. et al.**

**No. 9639.**

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 19, 1948.

Decided Nov. 22, 1948.

Mr. Jerome F. Barnard, of Washington, D. C., with whom Mr. Ernest F. Henry, of Washington, D. C., was on the brief, for appellants.

Mr. William S. Tarver, of Washington, D. C., with whom Mr. John L. Laskey, of Washington, D. C., was on the brief, for appellees Timberlake, et al.

Messrs. Geoffrey Creyke, Jr., and Andrew A. Lipscomb, both of Washington, D. C., entered appearances for appellee Arthur Thompson.

Messrs. Arthur G. Nichols, Jr., and Stanton C. Peelle, Jr., both of Washington, D. C., entered appearances for appellee American Security & Trust Co.

Mr. Harold P. Ganss, of Washington, D. C., entered an appearance for appellees Maude B. Ford, et al.

Mr. Charles D. Drayton, of Washington, D. C., entered an appearance for appellee Children's Hospital.

Mr. Charles F. R. Ogilby, of Washington, D. C., entered an appearance for appellee Washington Home for Incurables.

Mr. George C. Gertman, of Washington, D. C., entered an appearance for appellee Isabelle Walker.

Before EDGERTON, PRETTYMAN, and PROCTOR, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is an appeal from a judgment of the District Court in a civil action brought by the trustee under the will of Dorsey Clagett, deceased, for construction of that will and for instructions as to the proper distributees of the estate. The trial court rendered judgment upon the pleadings. It made extended findings of fact and conclusions of law and referred the matter to

the Auditor of the Court to determine the amounts distributable to the persons entitled to participate under the decision.

 Many of the able and, scholarly arguments presented by counsel relate to the rules of construction applicable to wills. But in this case we perceive in the will itself the intent of the testator, and that intent must be given effect. Technical rules of construction come into play only when the testator's intent cannot be satisfactorily discerned.[1]

 By his will this testator left all his property, with minor immaterial exceptions, in trust for his wife for her life. He then directed:

" * * * At the death of my wife, after paying all her funeral expenses and proper charges I direct my trustee to pay the following beneficiaries the sums named or such pro-rata share as they may be entitled to.

"To Elbert Clagett, Five Thousand dollars ($5,000.)

 * * * * * *

"To Ella L. Clagett or her child or children, born of her by William B. Clagett, Five Thousand dollars ($5,000.)

 * * * * * *

"To Smith Thompson, Jr., his heir or heirs Three Thousand Dollars ($3,000.)

 * * * * * *

"All the remainder of my estate together with such legacies as may have lapsed at the time of this distribution to be divided among the children then alive of my deceased brother William H. Clagett share and share alike."

There were other pecuniary bequests, but, with immaterial exceptions, they are like one or another of the quoted three.

It is at once apparent that the testator had in mind some difference between these three bequests. He was a literate man; in fact, the Register of Wills in this jurisdiction for nine years. He said, in the quoted language, that he desired Elbert Clagett himself to have $5,000; Ella L. Clagett or her children by William B. Clagett to have $5,000; and Smith Thompson, Jr., his heir or heirs to have $3,000. The language is clear enough. The difficulty arises when an attempt is made to apply the rule that the law favors the earliest possible vesting of an estate, which would lead to the conclusion that these bequests vested at the death of the testator. Having thus vested, the peregrinations of the several interests during the forty-two years of the existence of the life estate (the wife having outlived her husband that long) would present an involved problem. But we think that the testator obviated that difficulty. By two expressions, he clearly indicated the date at which circumstances should differentiate between the three classes of beneficiaries. He directed that "At the death of my wife" the trustee should "pay the following beneficiaries". And in the clause following the bequests, he referred to legacies which "may have lapsed at the time of this distribution", i. e., at the time of the death of his wife. Thus, he thought of his legacies as possibly lapsing at any time prior to his wife's death. If he had thought of them as vesting at his own death, so that the heirs of his named beneficiaries would thereupon take, he would hardly have referred to the possibility of their having lapsed at a date subsequent to his death. By the two expressions quoted, this testator clearly showed that as he wrote the different descriptions of his beneficiaries he was thinking of the time of his wife's death. If his language is followed literally, the difference between the several bequests becomes effective; if it is not followed literally, that difference becomes blurred and maybe lost by reason of deaths, births and assignments occurring between the death of the testator and that of the life tenant. For example, if the bequest to Elbert Clagett vested at the testator's death, Elbert Clagett then living, his heirs would take upon the death of the testator's wife, just as would the heirs of Smith Thompson, Jr., and the heirs of Ella Clagett's children. When all the will is read, the testator's intent seems clear to us. It was that the participating beneficiaries be those persons to whom the descriptions in the will applied as of the date of the death of the life tenant.

---

[1] Pyne v. Pyne, 1946, 81 U.S.App.D.C 11, 14, 154 F.2d 297, 300.

We are fully conscious of the authorities which establish that language such as "at the death of my wife" should be deemed to refer to the time of enjoyment of the bequest and not to the vesting of its title. But this again is a rule of construction for use where the testator's intent is not revealed.

Our view of the matter coincides with the conclusions of law reached by the learned trial judge.

■ Another question concerns the meaning of the clause in the will, above-quoted, which relates to "All the remainder", etc. The estate is not large enough to pay all the pecuniary bequests in full, or so many of them as have not lapsed. The question is whether the amounts of the lapsed legacies should go to make up the shortage in the funds available for the specific pecuniary bequests, or should go intact (or in proportion to the available funds) to the residuary legatees. Technically, the question is whether the phrase "together with such legacies as may have lapsed at the time of this distribution" is an integral part of the residuary clause or is an alternative designation of beneficiaries of the pecuniary bequests.

Again we think that the intent of the testator is apparent and was to convey to these residuaries a true residuum only, that is, any excess remaining after payment of all pecuniary bequests. If he had meant to designate a substitute recipient for the precise amount of a pecuniary bequest, he would hardly have done so by a mere parenthetical reference in the process of disposing of the residue of his estate. The testator seems to have contemplated, as he provided, that if his named pecuniary beneficiaries were not in being at the time of the distribution, their bequests would lapse, not merely be transferred intact to another person. The inclusion of the quoted provision in the residuary clause seems to us to have been a precautionary measure lest intestacy be suggested as to those funds. This was the view of the trial court.

It follows that the judgment of the District Court must be and it is hereby.

Affirmed.