In re ESTATE of Florence Voelzel KERR, a/k/a Florence V. Kerr, Deceased.

Ralph L. ATCHISON, Administrator, C.T.A.

v.

Lucille Voelzel HALL, Gustave W. Voelzel, Jr., Bernice Reed Evans, Appellant.

No. 22603.

United States Court of Appeals, District of Columbia Circuit.

Argued May 2, 1969.

Decided Feb. 13, 1970.

Petition for Rehearing Denied March 18, 1970.

**480**

Mr. Donald B. Robertson, Washington, D. C., with whom Mr. Richard S. T. Marsh, Washington, D. C., was on the brief, for appellant Evans.

Mr. Edmund D. Campbell, Washington, D. C., with whom Messrs. Jaquelin A. Marshall and Stuyvesant K. Bearns, Washington, D. C., were on the brief, for appellees.

Before BURGER\*, TAMM and ROBINSON, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Florence Voelzel Kerr, an attorney, died on April 18, 1966, domiciled in the District of Columbia.[1] She left a considerable estate in personalty,[2] and a will, dated November 12, 1946, which has been admitted to probate in the District. By that will, the testatrix made small bequests to Charles H. Voelzel, her brother,

---

\* Circuit Judge (now Chief Justice) Burger did not participate in the disposition of this case.

1. Although the testatrix, in her will, claimed Denver, Colorado, as her "legal

residence," the District Court found expressly that she was a domiciliary of the District of Columbia at her death.

2. See note 10, *infra.*

and Boswell F. Reed, her "esteemed friend,"[3] and, for her only other disposition, directed

> [t]hat all the rest of my estate, whether real, personal or mixed, of which I die seized, possessed, or entitled, whether now owned by me or hereafter acquired, and whereever [sic] found or situated, be divided equally between my brother Charles H. Voelzel and my esteemed friend Boswell F. Reed, if they both be living at the time of my demise and if one shall have predeceased me then all of my estate to the one remaining.

As time marched on from the execution of the will, the testatrix was predeceased by each of the two beneficiaries she designated therein. Boswell F. Reed died on November 15, 1952, leaving a daughter, the appellant, who is his only issue surviving the testatrix. Charles H. Voelzel died on December 12, 1962, without issue. At the testatrix' death, her next of kin were the appellees, children and sole issue of Gustave W. Voelzel, a brother of the testatrix pretermitted by her will, who had died on January 6, 1962. So it was that a contest over the residuary estate[4] took shape with the issue of the non-relative whom the testatrix named as a legatee on one side and, on the other, the testatrix' next of kin

whom, as well as their ancestor-relative, the will totally ignored.

Appellant, as sole surviving issue of the only residuary legatee having issue, stakes her claim on the District of Columbia antilapse statute,[5] which preserves a testamentary settlement on a beneficiary predeceasing the testator for the beneficiary's issue surviving the testator "[u]nless a different disposition is made or required by the will."[6] Appellees, as next of kin of the testatrix, contend that the bequest of the residuum was conditioned upon survival of the testatrix by at least one of the named beneficiaries, with the result that a different disposition—intestate devolution—of the residuum is a consequence inevitable from the terms of the will.

Such were the opposing positions in the District Court, whose authority to construe the will was invoked on petition by the personal representative[7] for guidance. In the court's view, the residuary clause made survivorship of the testatrix a condition precedent to any sharing thereunder, and that circumstance rendered the antilapse statute inapplicable. The court accordingly granted judgment on the pleadings directing distribution of the residuary estate under the District's intestacy laws[8] to appellees as the testatrix' next of kin. We modify the judgment slightly,[9] and affirm it as modified.[10]

3. Thrice so described by the testatrix in her will.

4. The controversy is confined to construction of the residuary clause. See note 9, *infra,* and text *infra* at note 96.

5. D.C.Code § 18–308 (1967), quoted in text *infra* at note 18.

6. *Id.*

7. The will designated Boswell F. Reed as executor. Because he predeceased the testatrix, an administrator *cum testamento annexo* was appointed and is functioning.

8. D.C.Code § 19–301 *et seq.* (1967).

9. We read the District Court's order as intending to confine the direction to the residuary estate. In the interest of clarity, however, we modify the order to de-

fine the content of the residuum *vis-a-vis* the subject matter of the specific bequests. See text *infra* at note 96.

10. For purposes of this appeal, we treat the testatrix' residuum as an estate consisting wholly in personal property. All parties, both in the District Court and here, have litigated exclusively on the premise that the issues pertain to the disposition of a residuum of personalty only, and on the theory that they are controlled by the law of the District of Columbia, and we read the District Court's opinion and judgment as founded on those predicates. The record establishes that the testatrix' estate was almost entirely, if indeed not entirely, in personalty, and assures us that she owned no realty in the District when she died. And while the record does indicate somewhat that the

## I

Absent both a controlling statute and a contrary intention manifested by the will,[11] well settled rules ordinarily seal the fate of a testamentary interest sought to be conferred upon one who predeceases the testator. A devise or bequest to a single beneficiary lapses upon his death prior to that of the testator.[12]

Similarly, the death during the testator's lifetime of one of two or more beneficiaries slated to take otherwise than as a class[13] or as joint tenants[14] lapses the interest of the deceased beneficiary.[15] The residuary bequest before us plainly contemplated a non-class gift[16] which, in our view, the legatees were to share not as joint tenants but as tenants in common,[17] if ensuing events made possible

testatrix may then have owned a small amount of real estate situated outside the District, it does not furnish us with details. In these circumstances, we proceed on the basis on which the parties have rested and, with the testatrix' domicile in the District at death, apply District law in resolving the appeal. Liberty Nat'l Bank of Washington v. Smoot, 135 F. Supp. 654, 659 (D.D.C.1955); 6 Page, Wills § 60.23 (Bowe-Parker ed. 1962). See also Readman v. Ferguson, 13 App. D.C. 60 (1898).

We must caution, however, that questions related to possible lapse of a devise of realty are governed by the law of the situs. In re Tibbetts' Estate, 48 Cal.App. 2d 177, 119 P.2d 368, 369–370 (1941); 6 Page, Wills § 60.23 (Bowe-Parker ed. 1962). See also DeVaughn v. Hutchinson, 165 U.S. 566, 575, 17 S.Ct. 461, 41 L.Ed. 827 (1896). Accordingly, neither the District Court's judgment nor ours is to be taken as an adjudication affecting any real estate located outside the District which the testatrix may have owned when she died. There will be no occasion, however, for any modification of the District Court's judgment on this account since the District of Columbia personal representative, as such, would not in any event have any functions to perform regarding foreign real estate. E. g., Robinson v. City Nat'l Bank of Colorado, 56 F.2d 225, 229 (D.C.Tex.1931); Lowrence v. Central Illinois Public Service Co., 161 F. Supp. 656, 657 (D.C.Ill.1958).

11. Even if unbenefited by an antilapse statute, a testamentary gift does not lapse in the face of a countervailing intention expressed in the will. See, e. g., In re Hoermann's Estate, 234 Wis. 130, 290 N.W. 608, 609, 128 A.L.R. 89 (1940). And testorial intention is obviously important under the District statute, which may operate to avoid a lapse unless "a different disposition is made or required by the will * * *." D.C.Code § 18–308 (1967), quoted in text infra at note 18.

12. See Wolfe v. Snyder, 48 F.Supp. 227, 229 (D.D.C.1942); Buffington v. Mason, 327 Mass. 195, 97 N.E.2d 538, 540, 37 A.L.R.2d 1 (1951); In re Martz' Estate, 318 Mich. 293, 28 N.W.2d 108, 110–111 (1947); In re Slater's Estate, 377 Pa. 285, 105 A.2d 59, 60 (1954).

13. See Snellings v. Downer, 193 Ga. 340, 18 S.E.2d 531, 534, 139 A.L.R. 860 (1942); Strauss v. Strauss, 363 Ill. 442, 2 N.E.2d 699, 703–704, 105 A.L.R. 1386 (1936); Lichter v. Bletcher, 266 Minn. 326, 123 N.W.2d 612, 615–616 (1963).

14. See Mackie v. Story, 93 U.S. 589, 593, 23 L.Ed. 986 (1876); Fowler v. Whelan, 83 N.H. 453, 144 A. 63, 65, 75 A.L.R. 752 (1928). See also note 17, infra.

15. Liberty Nat'l Bank of Washington v. Smoot, supra note 10, 135 F.Supp. at 657–658; Lacy v. Murdock, 147 Neb. 242, 22 N.W.2d 713, 718 (1946); Damron v. Mast, 121 N.J.Eq. 489, 191 A. 467, 470 (1937); In re Schefe's Estate, 261 Wis. 113, 52 N.W.2d 375, 379 (1952).

16. Compare Evans v. Ockershausen, 69 App.D.C. 285, 292, 100 F.2d 695, 702, 128 A.L.R. 177 (1938); George Washington Univ. v. Riggs Nat'l Bank of Washington, 66 App.D.C. 389, 390, 88 F.2d 771, 772 (1936).

17. By statute, "[e]very estate granted or devised to two or more persons in their own right, * * * shall be a tenancy in common, unless expressly declared to be a joint tenancy; * * *." D.C.Code § 45–816 (1967). This provision reverses the common law rule, previously in force in the District, by virtue of which such a grant or devise, without more, created a joint tenancy. Coleman v. Jackson, 109 U.S.App.D.C. 242, 244, 286 F.2d 98, 100, 83 A.L.R.2d 1043 (1960), cert. denied, 366 U.S. 933, 81 S.Ct. 1656, 6 L.Ed.2d 39 (1961). Mrs. Kerr's residuary clause, in undertaking to confer "all of my estate to the one remaining," does not connote the kind of survivorship that is inseparably incidental to joint tenancy since, as we

any sharing at all. Just as plainly, the language of the residuary clause, of its own force, interposed no barrier to lapse.

■ Our antilapse statute provides, however, in relevant part that

Unless a different disposition is made or required by the will, if a devisee or legatee dies before the testator, leaving issue who survive the testator, the issue shall take the estate devised or bequeathed as the devisee or legatee would have done if he had survived the testator.[18]

Boswell F. Reed, one of the residuary legatees, predeceased the testatrix but left a child, the appellant, who has survived her. The antilapse statute, as we have previously held, applies to gifts of the residuum as well as to other devises and bequests contained in the will.[19] Thus we are brought to the question, cru-

cial to determination of the conflicting claims to the residuum, whether "a different disposition [than to appellant] is made or required by the will, * *." [20]

■ As an expedient to mitigate the rigors of common law doctrine,[21] the antilapse statute is to be interpreted liberally with a view to attainment of its beneficent objective.[22] To render the statute inoperative, a purpose inconsistent with that objective must fairly appear,[23] and from the terms of the will itself.[24] In final analysis, however, the statute furnishes but a rule of construction to pilot the decision where the will indicates little or nothing of the testator's desires on lapse.[25] Where, on the other hand, the will reflects a countervailing intention with reasonable clarity, the statute does not save the gift from lapse.[26]

construe the quoted language, see text *infra* at notes 48–49, 61–64, the survivorship specified is of the testatrix and not one of the two residuary legatees by the other.

Moreover, the residuary clause, in its first aspect, specified that the residuum "be divided equally between" the two named legatees. Even at common law, limiting words of severance or distribution—"share and share alike" and "equally to be divided between them," as prominent examples—were destructive of the unity of interest indispensibly prerequisite to joint tenancy. 2 H. Tiffany, Real Property § 427 (3d. ed. 1939). *A fortiori*, that conclusion must follow under the statute. George Washington Univ. v. Riggs Nat'l Bank, *supra* note 16, 66 App.D.C. at 390, 88 F.2d at 772 (1936); Liberty Nat'l Bank of Washington v. Smoot, *supra* note 10, 135 F.Supp. at 657; Second Nat'l Bank of Washington v. Spinks, 122 F.Supp. 153, 145 (D.D.C. 1953), aff'd, 94 U.S.App.D.C. 424, 214 F. 2d 853 (1954).

18. D.C.Code § 18–308 (1967).

19. Mitchell v. Merriam, 88 U.S.App.D.C. 213, 214, 188 F.2d 42, 43, cert. denied, Mitchell v. Mitchell, 341 U.S. 935, 71 S. Ct. 855, 95 L.Ed. 1363 (1951).

20. In determining this question, "the will itself is to be first consulted and afterwards the statute. The operations should

not be reversed." In re Stewart's Estate, 270 Wis. 610, 72 N.W.2d 334, 336 (1955).

21. See McGrath's Ex'r v. Brodbelt, 128 S. W. 883, 884–885 (Ky.1910).

22. See In re Jerge's Will, 180 Mis. 268, 40 N.Y.S.2d 743, 746 (Surr.Ct.1943); Woolley v. Paxson, 46 Ohio St. 307, 24 N.E. 599, 600 (1899); Weiss v. Broadway Nat'l Bank, 204 Tenn. 563, 322 S.W. 2d 427, 432 (1959).

23. In re Carroll's Estate, 138 Cal.App.2d 363, 291 P.2d 976, 977 (1956); Brewer v. Curtis' Ex'r, 7 Boyce (30 Del.) 503, 108 A. 673, 674 (1920); Henney v. Ertl, 7 N.J.Super. 401, 71 A.2d 546, 548 (Super.Ct.1950).

24. See Vollmer v. McGowan, 409 Ill. 306, 99 N.E.2d 337, 340 (1951); Nicholson v. Fritz, 252 Iowa 892, 109 N.W.2d 226, 227 (1961); McGrath's Ex'r v. Brodbelt, *supra* note 21, 128 S.W. at 884.

25. In re Agrella's Will, 175 Misc. 456, 23 N.Y.S.2d 951, 952 (Surr.Ct.1940).

26. Pace v. Bradley, 84 U.S.App.D.C. 212, 214, 171 F.2d 350, 352 (1948); Walker v. Walker, 283 Ill. 11, 118 N.E. 1014, 1020 (1918); In re Gerdes Estate, 245 Iowa 778, 62 N.W.2d 777, 780, 70 A.L.R. 2d 210 (1954); In re Agrella's Will, *supra* note 25, 23 N.Y.S.2d at 952–953; Hoverstad v. First Nat'l Bank & Trust Co., 76 S.D. 119, 74 N.W.2d 48, 55, 56 A.L.R.2d 938 (1955).

■ Such an intention is manifested, and plainly so, where the will articulates the gift in words effectively conditioning its efficacy upon the beneficiary's survival of the testator.[27]   If, in such a situation, the beneficiary predeceases the testator, the statutory bar to lapse and the concomitant substitution of issue in the beneficiary's stead are at war with the testator's purpose that the gift shall take only in the event that the beneficiary outlives the benefactor.   Not at all surprisingly, then, the cases teach that antilapse legislation has no application to gifts limited to vest upon the beneficiary's survival of the testator and not otherwise.[28]   It matters not, in this connection, whether the gift is to a single [29] or to multiple [30] beneficiaries, or whether there is [31] or is not [32] a limitation over to another upon the death of the primary beneficiary during the lifetime of the testator.

■ Words referable to survivorship do not, however, necessarily condition a testamentary gift or, when they do, necessarily impose a condition of survival of the testator.   They may, on the other hand, only describe the beneficiary,[33] or the time at which he will begin to enjoy the estate given.[34]   In that event, the gift confers, not a future interest, but one presently vested, postponing at most only the right to its possession.[35]   Even if the gift is conditioned on survival, the condition is not necessarily survival of the donor, as distinguished from someone else.   Where the gift is to more than one person, it may refer simply to survival *inter sese;* [36] whether or not the gift is single, it may refer only to survival of a third person.[37]   The construction properly to be placed on the survivorship language is, of course, a product of testorial intention.[38]

27.   See cases cited *infra* note 28.

28.   Central Nat'l Bank v. Stevenson, 25 Del. Ch. 215, 16 A.2d 114, 116 (Ct.Chan. 1940) ; In re Barrett's Estate, 159 Fla. 901, 33 So.2d 159, 160 (1948) ; Powell v. Watkins, 221 Ga. 851, 148 S.E.2d 303, 304, 305 (1966) ; In re Gerdes Estate, *supra* note 26, 62 N.W.2d at 780 ; In re Wintermute, 97 N.J.Eq. 289, 127 A. 218, 219 (Ct.Err. & App.1925) ; Wallace v. Diehl, 202 N.Y. 156, 95 N.E. 646, 650, 33 L.R.A.,N.S., 9 (1911) ; Day v. Brooks, 10 Ohio Misc. 273, 224 N.E.2d 557, 566, 39 Ohio O.2d 441 (P.Ct.1967) ; Kunkel v. Kunkel, 267 Pa. 163, 110 A. 73, 74 (1920) ; In re Stewart's Estate, 270 Wis. 610, 72 N.W.2d 334, 336 (1955).

29.   *E. g.*, In re Gerdes Estate, *supra* note 26 ; Wallace v. Diehl, *supra* note 28 ; Kunkel v. Kunkel, *supra* note 28.

30.   *E. g.*, Central Nat'l Bank v. Stevenson ; In re Wintermute ; In re Stewart's Estate, all *supra* note 28.

31.   *E. g.*, Central Nat'l Bank v. Stevenson ; Wallace *v.* Diehl ; Kunkel *v.* Kunkel, all *supra* note 28.   See also In re Fintel's Estate, 239 Iowa 475, 31 N.W.2d 892, 895 (1948).

32.   *E. g.*, In re Barrett's Estate, *supra* note 30 ; In re Gerdes Estate, supra note 26 ; In re Wintermute, *supra* note 28.   See also In re Robinson's Will, 37 Misc.2d 546, 236 N.Y.S.2d 293, 295–296 (Surr.Ct. 1963).

33.   See O'Brien v. Dougherty, 1 App.D.C. 148, 155–162 (1893) ; In re Claus' Estate, 153 Misc. 206, 274 N.Y.S. 668, 670 (Surr.Ct.1934) ;   Eberts v. Eberts, 42 Mich. 404, 4 N.W. 172, 175–176 (1880) (dissenting opinion).

34.   See Huggett v. Burnet, 62 App.D.C. 67, 68, 64 F.2d 705, 706 (1933) ; Johnson v. Washington Loan & Trust Co., 33 App. D.C. 242, 256–257 (1909).   Cf. Howard v. American Sec. & Trust Co., 84 U.S. App.D.C. 135, 137, 171 F.2d 29, 31 (1949).

35.   See Johnson v. Washington Loan & Trust Co., *supra* note 34, 33 App.D.C. at 257.

36.   See text *infra* at notes 50–64.

37.   See Caine v. Payne, 86 U.S.App.D.C. 404, 405, 182 F.2d 246, 247, 20 A.L.R.2d 823, cert. denied, Caine v. Caine, 340 U.S. 855, 71 S.Ct. 72, 95 L.Ed. 626 (1950) ; Weppler v. Hoffine, 218 Ind. 31, 29 N.E. 2d 204, 205, 30 N.E.2d 549 (1940) ; Ruff v. Baumbach, 114 Ky. 336, 70 S.W. 828, 829–830 (1902).   Compare Howard v. American Sec. & Trust Co., *supra* note 34, 84 U.S.App.D.C. at 136–137, 171 F.2d at 30–31.

38.   See Caine v. Payne, *supra* note 37, 86 U.S.App.D.C. at 406, 182 F.2d at 248 ; O'Brien v. Dougherty, *supra* note 33, 1 App.D.C. at 156 ; Willits v. Conklin, 88 Neb. 805, 130 N.W. 757, 758, 33 L.R.A., N.S., 321 (1911) ; In re Hampson's Es-

It is important, too, in this connection, to bear in mind the fundamental difference between gifts that are inter vivos and those that are testamentary in character. Inter vivos gifts, by definition, vest some interest in some donee at some point in the donor's lifetime. A testamentary gift, again by definition, never becomes operative until the testator's death. While in the case of the former the purpose may possibly be to vest the interest during the donor's lifetime, although with possession deferred until after his death, such a construction is never possible if the disposition is testamentary in character. Thus words that at first blush connote survival of the testator may on closer scrutiny be found to have been intended to refer only to the time at which, in the natural course of events, the beneficiary expectably will begin to enjoy the estate.

## II

In the case at bar, the will specifies that the residuary estate is to "be divided equally between" the two beneficiaries named "if they both be living at the time of my demise" and, alternatively, "if one shall have predeceased me then all of my estate to the one remaining." It is against these provisions that we are summoned to measure the reach of the antilapse statute with a view to determining whether it furnishes the solution to the

problem at hand. At the outset, we find it profitable to analyze a decision treating an almost exactly parallel situation.[39]

That decision is *In re Wintermute*.[40] A testatrix bequeathed her residuary estate to two sisters, Susanna and Marilda, to be divided equally between them, but with the further provision that "in case at the time of my decease either one of my sisters as aforesaid should not be living then it is my will and I do hereby give the whole of my estate to the one surviving."[41] Both sisters predeceased the testatrix. Susanna, who married and died first, left a son, but Marilda was totally without issue. The court recognized that the New Jersey antilapse statute would have applied to the residuary clause had the testatrix not inserted the survivorship language.[42] On examination of that language, however, the court was "struck at once by the evident intent that it is survivorship of the testatrix by the immediate legatees named in the will that is the test laid down for succeeding to the property."[43] In consequence, the court held that the antilapse statute was inoperative:

> * * * we have the case of Susanna's share failing by her predecease; and Marilda's share also failing for the same reason; and both in view of the plain language of the will in which survivorship is a sine qua non. To say that the inheritance swings over to Susanna's issue is, in our view, an

tate, 134 A. 284, 285, 4 N.J.Misc. 642 (Orphans' Ct.1926) ; Casey v. Gallagher, 11 Ohio St.2d 42, 227 N.E.2d 801, 806 (1967).

39. While, "[i]n determining the intent of the testator, little aid is derived from the resort to formal rules or a consideration of judicial determinations in other cases apparently similar," Evans v. Ockershausen, *supra* note 16, 69 App.D.C. at 290, 100 F.2d at 700, quoting Baldwin v. National Sav. & Trust Co., 65 App.D.C. 174, 176, 81 F.2d 901, 903 (1936), nonetheless "[t]he principle of *stare decisis* is helpful in this field as an aid to analysis, rather than as a barrier to it. The doctrines laid down in the cases are ancillary to the guiding rule—that the testator's intent governs. Such doctrines must serve

as the testator's handmaiden, not his scourge." Brinker v. Humphries, 90 U.S. App.D.C. 180, 182–183, 194 F.2d 350, 353 (1952) (footnote omitted).

40. *Supra* note 28.

41. 127 A. at 218.

42. "Of course, it is perfectly clear that if the testatrix had left her residuary estate to her two sisters generally, and one of them had died in her lifetime leaving issue, such issue on surviving testatrix would take the share of the parent. * * * If she had stopped with the bequest to her two sisters to be divided equally between them, the case would be far different, and [the statute] would no doubt apply." *Id.*

43. *Id.*

erroneous application of the statute. If the act be applicable at all, the proviso is met by this will. We think it is not applicable at all; that it is aimed at cases where the testamentary provision is not limited by the necessity of survivorship in order to take. * * * [The statute] refers to a bequest at large and not to one expressly barred from taking effect unless the legatee survive testator.[44]

But this was not all, for the antilapse feature of the statute was subject to the proviso that it "shall not apply when the testator * * * shall by the will * * * have otherwise directed in regard to the children * * * of said * * * legatee dying * * *."[45] On that score, the court said:

The direction in the will is that if either sister die before testatrix, the estate shall go to the other; which is saying quite plainly that the dying sister's issue shall not take in any event. Whether Marilda's issue, had she left any, would have taken by surviving testatrix, is a question not before us, as Marilda had no children.

The legacy lapsed as to Susanna because she did not survive testatrix and was thereby excluded by the will. It lapsed as to Marilda because she was not living to receive it.[46]

So, the court concluded, the testatrix died intestate with respect to her residuary estate.[47]

There is much to commend the same result here, and by much the same logic.[48] No more than the *Wintermute* court are we plagued by the ambiguity that sometimes accompanies words connoting survivorship, for here the testatrix was explicit enough. The legatees were both to take only "if they both be living at the time of my demise," and in that event in equal shares. But "if one shall have predeceased me," the bequest was to inure exclusively "to the one remaining," and of the entire residuum. Since the latter contingency was the predeceasing of the testatrix by "one"—not both—of the legatees, it necessarily follows that "the one remaining" could only have been one of the legatees who happened to be living at the time of the testatrix' death.

The residuary clause makes evident a simple, harmonious dispositive scheme. In plain English, it expressly conditioned an equal division of the residuum upon both legatees surviving the testatrix, and a gift of the whole upon one of them doing so. Thus keyed to outliving the testatrix were both the quantity of the residuum to be taken and the legatee or legatees who were to take, which the clause fused inseparably. We could hardly do less than presume that the testatrix, a lawyer, picked the words that accurately conveyed her wishes in the matter.[49]

Appellant, however, challenges the *Wintermute* determination and argues that two cases, *Galloupe v. Blake* [50] and *In re Burns' Estate*,[51] chart a different course for us. That contention does not withstand scrutiny. Those cases involved testamentary provisions in favor of multiple beneficiaries or the survivor or survivors of them—provisions which, as construed, did not condition their gifts upon any beneficiary's survival of his benefactor. Quite obviously, a disposition contemplating a possible shifting of interests through survivorship of the beneficiaries *inter sese* presents different considerations, in terms of impact upon the operation of antilapse legisla-

44. *Id.*

45. *Id.* at 218–219. We quote the statute from the court's opinion.

46. *Id.* at 219.

47. *Id.*

48. *Wintermute* seemingly remains the law of New Jersey on facts such as are presented here. See Fidelity Union Trust Co. v. Berenblum, 91 N.J.Super. 551, 221 A.2d 758, 761 (Sup.Ct.1966), petition for certification denied, 48 N.J. 138, 224 A.2d 323 (1966).

49. See Hill v. Fill, 61 App.D.C. 72, 73, 57 F.2d 438, 439 (1932).

50. 248 Mass. 196, 142 N.E. 818 (1924).

51. 78 S.D. 223, 100 N.W.2d 399 (1960).

tion, from those generated by a requirement that the beneficiary outlive the testator before he can take.[52] Indeed, not only do the two cases upon which appellant relies focus on an essentially dissimilar problem but, to the extent that they reflect upon the issue at hand, they lend support to the conclusion we reach in this case.

In *Galloupe*, the second article of a will contained four clauses separately bequeathing sums of money to various cousins of the testatrix. The first three clauses uniformly bequeathed $5,000 "in equal shares" to two cousins "or the survivor of them."[53] The fourth clause bequeathed $2,500 to another cousin, a Miss Mary F. Robinson, "if she survives me."[54] Only the first three clauses were drawn into the litigation.[55] All but one of the beneficiaries under those three clauses had predeceased the testatrix, some with and others without issue surviving the testatrix, giving rise to the question whether the Massachusetts antilapse statute prevented lapsing against the issue. The court interpreted the survivorship provisions in the first three clauses as referable to survival of one

cousin by the other, and not to survival of the testatrix.[56] On that basis, the court declared that "[t]here is no inconsistent provision in the will making the statute inapplicable to the legacies under the first three clauses of article 2."[57]

Similarly, in *Burns* a testatrix gave her residuary estate to three sisters, "share and share alike," adding "in case of the death of any of said persons, that said rest and residue shall be divided equally between the survivors of said persons."[58] All three sisters predeceased the testatrix, the second to die leaving lineal descendants who based a claim to the residuum on the South Dakota antilapse statute. The trial and intermediate appellate courts had interpreted the survivorship language as indicating an intention that the residuary beneficiaries would not take unless they outlived the testatrix, and that, despite the statute, the residuary disposition had lapsed. The Supreme Court agreed that that conclusion, which coincides with ours here, would have been valid had the testatrix intended to condition the gift upon survival of herself.[59] The court

---

52. See P. Mechem, Problems Under Anti-Lapse Statutes, 19 Iowa L.Rev. 1, 7 (1933). The author agrees with our determination in the situation before us, *id.* at 7, and with the conclusion reached in *Galloupe* and *Burns* in the situation they treat. *Id.* at 10.

53. 142 N.E. at 819.

54. *Id.*

55. The opinion does not inform us as to the fate of the gift in favor of Miss Robinson under the fourth clause.

56. "It is plain that it was the intention of the testator that as to each group, both legatees, if living at her decease, should divide the $5,000; but as one might predecease her, she provided in that contingency that the survivor should take the whole amount. * * * The words 'or the survivor of them' are meaningless unless she intended that the survivor should take the whole amount. * * * The circumstance that in the fourth clause of article 2 the testatrix made a gift of $2,500 to her cousin Mary F. Robinson 'if

she survives me' does not indicate that it was her intention that each cousin should survive her to be entitled to a legacy given in the first, second or third clause of that article. The words 'or the survivor of them' cannot be construed as showing that the legacies in the first three clauses must fail if the legatees named did not survive her." 142 N.E. at 819–820.

57. *Id.* at 820.

58. 100 N.W.2d at 401–402.

59. To the court, it was "obvious that if the testator uses words indicating an intention that the named beneficiary shall take the gift only if he outlives the testator, there is nothing upon which the statute can operate." *Id.* at 402. Later, the court reiterated that "[a]n intention that the statute is not to apply is also revealed when the testator uses words indicating an intention that the named beneficiary shall take the gift only if he outlives the testator. If the gift is so conditioned there is nothing upon which the statute can operate." *Id.* at 402–403.

disagreed, however, that such an intention appeared clearly enough to preclude operation of the statute.[60]

Thus *Galloupe* and *Burns* turned on constructions that the gifts they considered were not made contingent upon survival of the testatrix. The survivorship language in *Galloupe* was "the survivor of them;"[61] in *Burns* it was "the survivor of said persons."[62] In both, the reference was unmistakably to survivorship between or among the beneficiaries and, by the same token, to a time other than the death of the testatrix. Those provisions diverge sharply from the survivorship language before us—"living at the time of my demise" and "predeceased me." Whatever may be the preferred doctrine as to whether mention of the contingency of survivorship of one beneficiary by the other manifests a purpose inconsistent with application of the antilapse statute,[63] that result cannot be gainsaid where, as here, the gift is clearly conditioned upon survival of the testatrix.[64]

Appellant also urges that incorporation of such a condition into the residuary clause did not repel the antilapse statute because of a somewhat peculiar circumstance in this case. It may be, so the argument runs, that the testatrix did not envision the possibility that both residuary beneficiaries would die before she did,[65] and so, as to that contingency, her will does not reflect a wish one way or the other. This means, the argument continues, that the antilapse statute applies on the theory that it cannot be said that a different disposition is made or required by the will.[66] We find that position unpersuasive, for it overlooks the feature of the will that does require a different disposition. As we have pointed out,[67] a condition of survivorship of the testator made indispensibly prerequisite to taking the gift is necessarily the expression of a purpose that the gift will take effect only if the survival occurs. To award the gift to issue of the nonsurviving beneficiary is inevitably to frustrate that purpose. It is enough, then, to preclude operation of the statute that the will unambiguously specifies the condition, and that the efficacy of the condition remains unimpaired.[68]

### III

As we have stated, the District Court construed the residuary clause of the subject will on a motion for judgment on

---

60. In the court's view, "[t]he intent that the gift is effective only if the recipient outlives the testators [*sic*], must also be clear before the statute is ousted, and if this is doubtful, it too must be resolved in favor of the operation of the statute." *Id.* at 403. Recognizing that "[w]hether a gift to two or more beneficiaries or the the survivor of them shows an intention to exclude the operation of the statute, if they all die before the testator, is a question upon which there is a division of authority," *id.*, the court accepted an alternative suggestion by Professor Mechem, *supra* note 52, at 10, " 'that the survivorship requirement is applicable only in the case where one survives; that the testator did not contemplate or provide for the case where neither survives, and that accordingly the statute is left to operate.' " *Id.* "The survivorship clause in this paragraph by its terms," said the court, "does not contemplate the death of all three sisters before the testatrix. * * * Nothing is said as to who shall take if they all predecease her. Probably this happen-

ing did not occur to her when the will was being prepared." *Id.* In these circumstances, the court was "unable to hold that it clearly appears that the testatrix intended the statute was not to apply." *Id.*

61. Text *supra* at note 53.

62. Text *supra* at note 58.

63. We intimate no view on that matter.

64. Text *supra* at notes 27–32.

65. We, too, recognize this possibility. See text *infra* at notes 85–95.

66. *Compare In re Burns, supra* note 51, 100 N.W.2d at 403, partly quoted at *supra* note 60.

67. See text *supra* at notes 27–32.

68. As in Part III we hold, we are not at liberty to dilute the clearly conditional language the will employs, or speculate as to what the testatrix may have contemplated, or fill a dispositive void that she may have left in the will.

the pleadings,[69] thereby foreclosing the opportunity, which appellant sought, to present extrinsic evidence. By appellant's proffer,[70] that evidence, in substance, would have tended to show, on the one hand, the testatrix' affection and gratitude to Boswell F. Reed, appellant's father,[71] and, on the other, a long standing and deep seated hostility toward Gustave W. Voelzel, appellees' father, and an apparent desire to bar him from participation in her estate.[72] On the premise that the will, examined in that circumstantial context, would not manifest a desire by the testatrix to shun the antilapse statute, whether or not it would do so in a different context, it is contended that the court erred in directing distribution to appellees without an evidentiary hearing.[73]

Undeniably, the polestar in construction of a will is the testator's intention,[74] in the ascertainment of which evidence extrinsic to the will frequently assumes a proper and helpful role.[75] Where the language of the will

---

69. See text *supra* at note 8.

70. Discovery had been commenced but had not been completed at the time the motion for judgment on the pleadings was heard and disposed of. Consequently, the specific items of evidence tendered to the District Court, see notes 71–72, *infra*, were more nearly simply illustrative of what appellant might ultimately be able to prove. But while this is so, and no matter what quantity and quality of specific items might later have eventuated, there is nothing to suggest to us that the thrust of appellant's contemplated showing would differ from what she now says it would be.

71. According to appellant, the evidence would have shown that Reed was an old friend of the testatrix' family, having represented the testatrix and her parents for many years before his death for little or no remuneration, and that the testatrix felt indebted to him on that account.

72. Appellant's principal claim in this regard is that the testatrix intended to exclude this brother from sharing in her estate and purposely changed her will to accommodate that desire. Appellant tendered a document purporting to be a carbon copy of an unsigned letter to this brother, written only in few months before her execution of the will, which stated in part "that you will have no claim on anything that belongs to me personally" because "I told you that the first thing I was going to do was to change my will."

It is, of course, well settled that a testator may bar succession to his estate by one entitled as heir or next of kin only by devising or bequeathing the estate to another or others. Estate of Dunn, 120 Cal.App.2d 374, 260 P.2d 964, 965 (1953) ; Tilton v. Tilton, 382 Ill. 426, 47 N.E.2d 454, 456–457 (1943) ; In re Hefner, 122 N.Y.S.2d 252, 253–254 (Surr. Ct.1953).

73. Appellant seeks additional support from the canon favoring a construction of the will that will avoid intestacy. *E. g.*, Thropp v. Farnum, 96 U.S.App.D.C. 175, 178, 223 F.2d 640, 643, cert. denied, 350 U.S. 923, 76 S.Ct. 212, 100 L.Ed. 808 (1955) ; Hilton v. Kinsey, 88 U.S.App. D.C. 14, 18, 185 F.2d 885, 889, 23 A.L.R. 2d 830 (1951). But, as we have had occasion to hold, presumptions and technical rules of construction may be invoked only when the testator's intent cannot otherwise be satisfactorily discerned. Brinker v. Humphries, *supra*, note 39, 90 U.S.App.D.C. at 183, 194 F.2d at 353 ; Howard v. American Sec. & Trust Co., *supra* note 34, 84 U.S.App.D.C. at 136– 137, 171 F.2d at 30 ; Montgomery v. Brown, 25 App.D.C. 490, 493 (1922).

74. *E. g.*, Berryman v. Riggs Nat'l Bank of Washington, 131 U.S.App.D.C. 42, 43, 401 F.2d 993, 994 (1968) ; Hall v. Killingsworth, 102 U.S.App.D.C. 307, 308, 253 F.2d 43, 44 (1958) ; Dean v. Tusculum College, 90 U.S.App.D.C. 304, 305, 195 F.2d 796, 797 (1952) ; Sullivan v. Bond, 86 U.S.App.D.C. 146, 147, 180 F.2d 47, 48 (1950).

75. While expressions in some of the early decisions of this court might be taken to indicate that extrinsic evidence is never admissible as an aid to construction of a will, see McAleer v. Schneider, 2 App. D.C. 461, 467 (1894) ; Crenshaw v. Mc- Cormick, 19 App.D.C. 494, 502–503 (1902) ; Atkins v. Best, 27 App.D.C. 148, 152 (1906) ; General Clergy Relief Fund v. Sharpe, 43 App.D.C. 126, 133 (1915) ; Brown v. Wells, 45 App.D.C. 428, 437– 438 (1916), in later years we have emphasized that the rule is not so narrow. Baker v. National Sav. & Trust Co., 86 U.S.App.D.C. 161, 162, 181 F.2d 273, 274 (1950). In Mitchell v. Merriam, *supra* note 19, 88 U.S.App.D.C. at 215, 188 F.2d at 44, we abolished the distinction be-

is ambiguous, or becomes so when it is sought to be applied, such evidence may be received to identify a beneficiary,[76] to apply a description of property disposed of,[77] and for other somewhat limited purposes.[78] But whenever tendered as an aid to interpretation, the office of extrinsic evidence "is limited to an effort to understand what the testator meant when he wrote the language which, upon its face and without explanation, is doubtful or meaningless."[79] Such evidence is admissible "only for the purpose of interpreting something actually written in the will and never to add provisions to the will."[80] It is inadmissible to "explain" unambiguous features of the will[81] or, even when in the form of the testator's declarations of intention, to enlarge or diminish the estate conferred.[82] In sum, no matter how clearly a testator's wish to make a particular disposition may appear from sources out-side the will, a court cannot give it effect unless the words written into the will effect that disposition or are reasonably susceptible to the interpretation that they do.[83]

■ As read both by the District Judge and by us, the language the testatrix used in the residuary clause of her will is explicitly conditional.[84] A taking under the residuary bequest and the extent of participation in the residuum were unequivocally made contingent upon survival of the testatrix. Lacking ambiguity, there was no occasion authorizing the District Judge to consider outside evidence in the assessment of the testatrix' intent in those respects. Nor was he at greater liberty to let the evidence in for the purpose of creating an ambiguity not already there.

■ Appellant's effort to summon extrinsic evidence suffered, too, from another devastating consideration. The re-

tween latent and patent ambiguities, and stated unequivocally that "[c]ompetent extrinsic evidence should be received whenever it tends to show what a testator meant by ambiguous words." *Id.* at 215, 188 F.2d at 44.

76. Mitchell v. Merriam, *supra* note 19, 88 U.S.App.D.C. at 215, 188 F.2d at 44; Association of Survivors of Seventh Georgia Regiment v. Larner, 55 App.D.C. 156, 158, 3 F.2d 201, 203 (1925).

77. Smith v. Shelton, 95 U.S.App.D.C. 8, 10, 217 F.2d 22, 24 (1954); Association of Survivors of Seventh Georgia Regiment v. Larner, *supra* note 76, 55 App.D.C. at 158, 3 F.2d at 203.

78. Baker v. National Sav. & Trust Co., *supra* note 75, 86 U.S.App.D.C. at 162, 181 F.2d at 274.

79. *Id.*

80. Association of Survivors of Seventh Georgia Regiment v. Larner, *supra* note 76, 55 App.D.C. at 158, 3 F.2d at 203. See also Baker v. National Sav. & Trust Co., *supra* note 75, 86 U.S.App.D.C. at 162, 181 F.2d at 274; Buchanan v. National Sav. & Trust Co., 57 App.D.C. 386, 387, 23 F.2d 994, 995 (1928).

81. Baker v. National Sav. & Trust Co., *supra* note 75, 86 U.S.App.D.C. at 162, 181 F.2d at 274; Association of Survivors of Seventh Georgia Regiment v.

Larner, *supra* note 76, 55 App.D.C. at 158, 3 F.2d at 203; Crenshaw v. McCormick, *supra* note 75, 19 App.D.C. at 502–503; Kaiser v. Brandenburg, 16 App.D.C. 310, 316–318 (1900); McAleer v. Schneider, *supra* note 75, 2 App.D.C. at 467.

82. Brown v. Wells, *supra* note 75, 45 App. D.C. at 437; Atkins v. Best, *supra* note 75, 27 App.D.C. at 152.

83. For example, in General Clergy Relief Fund v. Sharpe, *supra* note 75, a testatrix' will gave her residuary estate to her executors with the request that they distribute the residue "among such persons as [they] shall deem proper." Enclosed with the will was a letter signed by the testatrix and addressed to the executors, but not executed or attested as required by the statute of wills, in which the testatrix undertook to bequeath the residuary estate to a named legatee. This court recognized as inevitable the concession that the letter had no testamentary effect, and so could not be used to modify any of the provisions of the will. 43 App.D.C. at 130. See also Hall v. Killingsworth, *supra* note 74, 102 U.S.App.D.C. at 310, 253 F.2d at 46; Association of Survivors of Seventh Georgia Regiment v. Larner, *supra* note 76, 55 App.D.C. at 158, 3 F.2d at 203.

84. Text supra at notes 48–49, 61–64.

siduary clause under interpretation, we reiterate, expresses but two contingencies as events upon which the residuum is alternatively bequeathed. The first is that the legatees "both be living at the time of my demise * * *;" the other is that "one shall have predeceased me. * * *" As things turned out, neither event occurred. At the same time, the will is completely silent as to the disposition of the residuum if both legatees happened to predecease the testatrix—the contingency that did eventuate. Were we to assume even that appellant's evidence carried all the force claimed for it, it could not legitimately supply this fatal omission.

In George Washington University v. Riggs National Bank,[85] where a residuary clause ran in favor of four legatees but was invalid as to one, we held that one's share did not inure to the benefit of the other three. We explained that "[w]hile the intention of the testator to dispose of all of his estate may appear from the face of the will, if a condition later arises which was clearly not contemplated by the testator, it is not within the power of the courts to amend the will by attempting to supply the omission."[86] We protested that when a "testator has overlooked a condition which he would perhaps have provided for if it had occurred to him, the court cannot guess at what provision he would probably have made and by construction read it as a part of his will on the presumption that he would naturally have made such a provision if he had thought of it."[87] We admonished that "[w]here there is nothing in the will itself to show the intention of the testator as to the disposition of his property in the condition which has actually arisen, the court cannot hold that the will disposes of the property in a particular way, on the supposition that the testator would probably have disposed of it in that way if his attention had been called to the particular circumstances."[88]

Similarly, in Hall v. Killingsworth,[89] a testatrix undertook the creation of a trust in certain realty and for the benefit of five named individuals and, in the event of its sale, for division of the proceeds therefrom among four of the beneficiaries. We declined an invitation to read the name of the fifth beneficiary into the group to share in the division, declaring that we could not do so "no matter how clear is the proffered evidence that the testator intended this result."[90] We explained that "[w]e may construe one name to mean another, * * * but we cannot supply a name where an unambiguous vacuum exists."[91]

The message these cases convey is evident. By statute, and with but a single necessitous exception not applicable here,[92] all wills must be reduced to writing and executed in a particular manner.[93] Courts, of course, interpret what the testator puts down, and strive to give the written words their true values. Where the words are imprecise, the court may, in aid of its interpretative function, consider extrinsic evidence tending to clarify their intended meaning. But there is a great difference, in the use of extrinsic materials, between construction of the words found within the will and wholesale reading into the will of words it does not contain. So long as we are not to abridge the statute of wills, a litigant may not be per-

85. *Supra* note 16.

86. 66 App.D.C. at 390, 88 F.2d at 772.

87. *Id.* at 390, 88 F.2d at 772, quoting Pontius v. Conrad, 317 Ill. 241, 148 N.E. 17, 18 (1925).

88. *Id.*, quoting Pontius v. Conrad, *supra* note 87, 148 N.E. at 18.

89. *Supra* note 74.

90. 102 U.S.App.D.C. at 310, 253 F.2d at 46.

91. *Id.*

92. Nuncupative wills, meeting special requirements, by persons in actual military or naval service or by mariners at sea. D.C.Code § 18–107 (1967).

93. D.C.Code § 18–103 (1967).

mitted to furnish by parol those features of a testament for which the law, for the best of reasons, demands a peculiarly formalized writing.[94] The "right to examine facts extrinsic to the written words of a will does not include the right to * * * supply a provision omitted by the testator, or to guess at what his intent would have been if he had thought of a contingency which he plainly did not think of or which is not covered by some general discernible intent."[95]

We hold that under the testatrix' residuary clause, in each of its two alternatives, the indispensible prerequisite to a taking was survival of the testatrix. We further hold that the condition thus imposed was inimical to operation of the antilapse statute, and that death of both beneficiaries during the testatrix' lifetime caused the residuary clause to lapse. It is, of course, possible —perhaps even probable—that had the testatrix addressed her will to that contingency, she would have made a bequest

to the issue. The insurmountable reality, however, is that the testatrix made no provision in her will for that contingency, and neither a party nor the court can remake the testament for her.

Such were, substantially, the conclusions reached in the District Court, and by a process of reasoning harmonious with our own. Its judgment "instructs the administrator c. t. a. of the estate of Florence V. Kerr that it should be distributed to the next of kin of the deceased, in accordance with the laws of intestacy of the District of Columbia." We interpret this instruction as referring only to distribution of the residuary estate,[96] but deem it best to make the judgment explicit in that regard. The judgment is accordingly modified by substituting the words "the residuary estate" for the word "it" in the portion quoted above. As modified, the judgment is affirmed.

So ordered.

---

94. The statute of wills "is a wise declaration of public policy. It recognizes the right of the owner of property to dispose of it by will, and its undoubted purpose is to insure correctness and guard against mistake and imposition. Unless the formalities prescribed are complied with, the instrument is void. * * * The instrument speaks when the voice of the testator is stilled by death. A will conforming to the requirements of the statute, therefore, should be interpreted according to its terms, and, unless those terms are ambiguous, no speculation based upon extrinsic evidence should be indulged. In the absence of fraud or undue influence, it will be assumed that the disposition actually made by the testator represented his intentions. With the motives underlying a particular bequest the court has nothing to do. Its function, and sole function, is to give effect to the expressed intent of the testator." Associa-

tion of Survivors of Seventh Georgia Regiment v. Larner, supra note 76, 55 App. D.C. at 158, 3 F.2d at 203 (citations omitted).

95. Baker v. National Sav. & Trust Co., supra note 75, 86 U.S.App.D.C. at 162, 181 F.2d at 274.

96. The unconditional bequest of a ring to Boswell F. Reed by the sixth clause of the will was saved for appellant by the antilapse statute. The bequest of a ring and a watch to Charles H. Voelzel by the fifth clause failed for lack of issue to take, and those items thereby become included in the residuary clause. D.C.Code § 18–308 (1967). The residuary estate is thus comprised of the entire estate other than the ring bequeathed by the sixth clause, excluding any real estate outside the District of Columbia that the testatrix may have owned at the time of her death. See note 10, supra.